1   SCOTT J. HYMAN (State Bar No. 148709)
    sjh@severson.com
2   DIVYA S. GUPTA (State Bar No. 284282)
    dsg@severson.com
3   SEVERSON & WERSON
    A Professional Corporation
4   The Atrium
    19100 Von Karman Avenue, Suite 700
5   Irvine, California 92612
    Telephone: (949) 442-7110
6   Facsimile: (949) 442-7118

7   LEWIS S. WIENER, *admitted pro hac vice*
    lewis.wiener@sutherland.com
8   SUTHERLAND ASBILL & BRENNAN, LLP
    700 Sixth Street, NW, Suite 700
9   Washington, DC 20001-3980
    Telephone: (202) 383-0100
10  Facsimile:  (202) 637-3593

11  Attorneys for Defendants
    NEW YORK LIFE INSURANCE AND ANNUITY
12  CORPORATION and NYLIFE SECURITIES LLC

13              **UNITED STATES DISTRICT COURT**

14   **CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

| | |
|---|---|
| 15  ERIC B. FROMER CHIROPRACTIC, INC., a California corporation, individually and as the representative of a class of similarly-situated persons, | Case No. 2:15-cv-04767 AB (JCx) Hon. Andre Birotte, Jr. Ctrm. 4 – Spring Street |
| Plaintiff, | **CLASS ACTION** |
| vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS DEFINITION** |
| NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, NYLIFE SECURITIES LLC and JOHN DOES 1-10, | |
| Defendants. | **(Fed. R. Civ. P. 12(b)(1), 12(b)(6), & 12(f))** |
| | Date:      September 28, 2015 Time:     10:00 a.m. Ctrm.:   4 |
| | Action Filed:   June 24, 2015 Trial Date:    None Set |

27

28

12578.0001/4738017.1                                                     2:15-cv-04767 AB (JCx)

MEMO OF P's & A's i/s/o MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS DEF.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

I.    PRELIMINARY STATEMENT ..................................................................1

II.   STATEMENT OF FACTS ...........................................................................2

III.  ARGUMENT ...............................................................................................4

    A.    Motion To Dismiss For Lack Of Subject Matter Jurisdiction Or, In The Alternative, Motion To Stay ...............................................................4

        1.    A Stay in This Case is Warranted Due to Pending Supreme Court Proceedings...................................................................5

        2.    Plaintiff's Claims are Moot (*Campbell-Ewald*) ............................6

        3.    Plaintiff Lacks Article III Standing (*Spokeo*).................................7

    B.    Motion To Dismiss Under Rule 12(b)(6) For Failure To State A Claim That The Faxes Are Advertising .......................................................9

        1.    Legal Standard Under Rule 12(b)(6)...........................................10

        2.    Plaintiff Must Establish That the Faxes are "Advertisements" Under the TCPA ..............................................10

        3.    The Faxes are Not "Advertisements" ...........................................12

        4.    The Faxes are Not a Pretext to an Advertisement ........................13

    C.    Motion To Dismiss For Failure To Adequately Allege Defendants' Responsibility For The Faxes ................................................15

    D.    Plaintiff's § 17538.43 Claim Is Preempted By The TCPA And Should Be Dismissed ...............................................................................18

    E.    Motion To Strike The Class Definition .................................................18

IV.   CONCLUSION .........................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Addison Automatics, Inc. v. RTC Group, Inc.*,
No. 12-C-9869, 2013 WL 3771423 (N.D. Ill. July 16, 2013)................................. 14

*Ariz. Christian Sch. Tuition Org. v. Winn*,
131 S. Ct. 1436 (2011).................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................. 10, 15, 16

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ...................................................................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................... 10, 18

*Boise v. ACE USA, Inc.*,
No. 15-CV-21264, 2015 WL 4077433 (S.D. Fla. July 6, 2015).............................6

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008)................................................... 20

*Caldwell v. Caldwell*,
545 F.3d 1126 (9th Cir. 2008) ...........................................................9

*Chamber of Commerce of the U.S. v. Lockyer*,
No. 2:05-CV-2257, 2006 WL 462482 (E.D. Ca. Feb. 27, 2006) ......................... 18

*Clinton v. Jones*,
520 U.S. 681 (1997) .......................................................................5

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
662 F.3d 913 (7th Cir. 2011) ............................................................ 10

*Dodd-Owens v. Kyphon, Inc.*,
No. C 06-3988 JF (HRL), 2007 WL 420191 (N.D. Cal. Feb. 5, 2007) ................ 19

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993) rev'd on other grounds, 510 U.S. 517
(1994)................................................................................................ 19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) .................................................................... 8, 9

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*,
No. 06 C 949, 2007 WL 4365359 (N.D. Ill. Dec. 13, 2007)................................. 21

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982) ...................................................................... 19

*Genesis Healthcare Corp. v. Symczyk*,
133 S. Ct. 1523 (2013).................................................................7

*Gladstone, Realtors v. Vill. of Bellwood*,
441 U.S. 91 (1979) ....................................................................8

*Gomez v. Campbell-Ewald Co.*,
768 F.3d 871 (9th Cir. 2014) *cert. granted*, No. 14-857, 135 S.Ct.
2311 (U.S. May 18, 2015) .................................................... passim

*Gonzales v. Comcast Corp.*,
No. 10-CV-01010, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012) report
and recommendation adopted, 2012 WL 217708 (E.D. Cal. Jan. 23,
2012)............................................................................................9

*In re 5-hour Energy Mktg. & Sales Practice Litig.*,
No. MDL 13-2438 PSG, 2014 WL 5311272 (C.D. Ca. Sept. 4, 2014) ...................2

*In re Old Kent Mortgage Co. Yield Spread Premium Litig.*,
191 F.R.D. 155 (D. Minn. 2000) ............................................... 20

*Kamar v. RadioShack Corp.*,
375 F. App'x 734 (9th Cir. 2010) ......................................... 20, 21

*Kamm v. California City Development Co.*,
509 F.2d 205 (9th Cir. 1975) .................................................... 19

*Langan v. United Servs. Auto. Ass'n*,
69 F. Supp. 3d 965, 988 (N.D. Cal. 2014) ................................... 19

*Larson v. Valente*,
456 U.S. 228 (1982) ...................................................................9

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
No. 4:12–CV–221 CEJ, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ................. 21

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................. 8, 9

*Lyons v. Bank of Am., NA*,
Case No. 11–1232 CW, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) ............... 19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .....................................................2

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) .................................................... 20

*N.B. Indus., Inc. v. Wells Fargo & Co.*,
465 F. App'x 640 (9th Cir. 2012) ......................................... 11, 13

*Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
781 F.3d 1245 (11th Cir. 2015) ............................................. 16, 17

*Panacci v. A1 Solar Power, Inc.*,
  Case No. 15-cv-00532-JCS, 2015 WL 3750112 (N.D. Cal. June 15,
  2015) .......................................................................................................... 20

*Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*,
  Civil Action No. 1:09-CV-1076-RWS, 2011 WL 553826 (N.D. Ga.
  Feb. 7, 2011) ....................................................................................... 11, 12

*Phillips Randolph Enters., LLC v. Adler-Weiner Research Chi., Inc.*,
  526 F. Supp. 2d 851 (N.D. Ill. 2007).............................................. 13, 15

*Physicians Healthsource, Inc. v. Alma Lasers, Inc.*,
  No. 12 C 4978, 2012 WL 4120506 (N.D. Ill. Sept. 18, 2012) .............. 14

*Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*,
  No. 3:14-cv-405(SRU), 2015 WL 144728 (D. Conn. Jan. 12, 2015) .............. 13

*Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*,
  No. 12-2132(FLW), 2013 WL 486207 (D.N.J. Feb. 6, 2013) ............... 12

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) ............................................................... 19

*Pitts v. Terrible Herbst, Inc.*,
  653 F.3d 1081 (9th Cir. 2011) .................................................................7

*Raines v. Byrd*,
  521 U.S. 811 (1997) .................................................................................8

*Robins v. Spokeo. Campbell-Ewald*,
  135 S. Ct. 2311 (*cert. granted*)...............................................................5

*Robins v. Spokeo, Inc.*,
  742 F.3d 409 (9th Cir. 2014) *cert. granted*, 135 S.Ct. 1892 (U.S. Apr.
  27, 2015) ......................................................................................... passim

*Sadowski v. OCO Biomedical, Inc.*,
  No. 08 C 3225, 2008 WL 5082992 (N.D. Ill. Nov. 25, 2008) ............... 13

*Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*,
  788 F.3d 218 (6th Cir. 2015) .......................................................... 12, 13

*Sauter v. CVS Pharmacy, Inc.*,
  No. 2:13-CV-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014) ...... 19, 21

*Spencer v. Kemna*,
  523 U.S. 1 (1998) .....................................................................................7

*St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*,
  No. 4:12-CV-02224, 2013 WL 1076540 (E.D. Mo. Mar. 13, 2013) ...... 14

*Stubbs v. McDonald's Corp.*,
  224 F.R.D. 668 (D. Kan. 2004) ............................................................. 19

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................................................................ 8

*Thomas v. Taco Bell Corp.*,
   582 F. App'x 678 (9th Cir. 2014) .............................................................. 16, 17

*Thompson v. Merck & Co.*,
   No. C.A. 01-1004, 2004 WL 62710 (E.D. Pa. Jan. 6, 2004) ........................... 19

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................................ 19

*Ubaldi v. SLM Corp.*,
   No. 11-01320 EDL, 2014 WL 1266783 (N.D. Cal. Mar. 24, 2014) ................ 20

*United States v. Vanoosterhout*,
   898 F. Supp. 25 (D.D.C. 1995) ..................................................................... 10

*Wolf v. Lyft, Inc.*,
   No. C 15-01441 JSW, 2015 WL 4455965 (N.D. Cal. July 20, 2015) ............... 6

*Wright v. City of Santa Cruz*,
   No. 13-cv-1230-BLF, 2014 WL 5830318 (N.D. Cal. Nov. 10, 2014) ............. 16

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ........................................................................ 20

**STATUTES**

15 U.S.C.
   § 1681 *et seq.* .................................................................................................. 8

47 U.S.C.
   § 227 ............................................................................................................... 1
   § 227(a)(5) ................................................................................................. 1, 11
   § 227(b)(1)(C) ........................................................................................... 1, 10

Cal. Bus. & Prof. Code
   § 17538.43 ............................................................................................. 1, 2, 18

**OTHER AUTHORITIES**

47 C.F.R. 64.1200(f)(10) ................................................................................. 16

47 C.F.R. § 64.1200(f)(1) .................................................................................. 1

71 Fed. Reg. 25967-01, at 25973 ..................................................................... 11

1 McLaughlin on Class Actions § 3:4 (10th ed. 2013) ...................................... 19

Fed. R. Civ. P. 8 ........................................................................................ 15, 16

Fed. R. Civ. P. 10(c) ......................................................................................... 2

Fed. R. Civ. P. 12(b)(1) ........................................................... 7, 22

Fed. R. Civ. P. 12(b)(6) ............................................................. passim

Fed. R. Civ. P. 12(f) ............................................... 2, 3, 18, 22

Fed. R. Civ. P. 23(c)(1)(A) ........................................................ 18

Fed. R. Civ. P. 23(d)(1)(D) ......................................................... 18

Fed. R. Civ. P. 68 ........................................................ 1, 4, 5, 7

*Rules and Regulations Implementing the Telephone Consumer
    Protection Act of 1991*; *Junk Fax Prevention Act of 2005*, 71 Fed.
    Reg. 25967-01, 25974 (May 3, 2006) (attached as Exhibit 2 to S.
    Hyman Declaration) ................................................................ 11

# I.  PRELIMINARY STATEMENT

In its Putative Class Action Complaint ("Complaint"), Plaintiff Eric B. Fromer Chiropractic, Inc. ("Plaintiff") alleges violations of the Telephone Consumer Protection Act, as amended by the Junk Fax Prevention Act, 47 U.S.C. § 227 ("TCPA") and Cal. Bus. & Prof. Code § 17538.43 ("§ 17538.43") based on two single-page faxed seminar invitations (the "Faxes") allegedly received from Defendants New York Life Insurance and Annuity Corporation ("NY Life & Annuity") and NYLife Securities LLC ("NYLife Securities") (collectively, "Defendants").  For the reasons set forth below, this case should be stayed, or in the alternative dismissed, or in the further alternative the Court should strike the class definition.

This case should be stayed pending rulings from the U.S. Supreme Court in *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) *cert. granted*, No. 14-857, 135 S. Ct. 2311 (U.S. May 18, 2015) (offer of judgment and mootness) and *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 1892 (U.S. Apr. 27, 2015) (standing based on statutory violation without concrete injury). These cases bear directly on two issues fundamental to this case, namely (a) whether Plaintiff's claims have been mooted by an Offer of Judgment under Federal Rule of Civil Procedure 68, and (b) whether Plaintiff lacks Article III standing to assert claims based on an alleged statutory violation of the TCPA without also establishing damage that rises to the level of actual, concrete, non-*de minimis* injury in fact.

Independent of Defendants' Motion to Stay, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  Under the TCPA, the sending of an unsolicited facsimile is actionable only if it constitutes an "advertisement."  47 U.S.C. § 227(b)(1)(C).  An "advertisement" is defined as material that promotes the "commercial availability or quality of any property, goods, or services."  47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(1).  The Faxes in this case are not advertisements.  Instead, the Faxes

invited the recipient to attend a free informational workshop for medical professionals to learn more about improving their personal finances.  No goods or services were advertised, and none were sold (or even available to be sold) as a result of the Faxes because the workshops described in the invitations were informational only (and were ultimately cancelled prior to the presentation dates).  As a result, Plaintiff's TCPA and § 17538.43 claims fail.

Further, the Complaint should be dismissed for failure to allege sufficient facts to show which, if either, Defendant(s) was allegedly responsible for the Faxes and/or how that Defendant(s) was allegedly responsible for the alleged violation of the TCPA.  Instead, the Complaint rests solely on conclusory and formulaic allegations that Defendants transmitted the faxes (which they did not).

Finally, the Court should strike the class definition under Rule 12(f) for alleging an impermissible fail-safe class.  The proposed class definition is a fail-safe class because it incorporates within it numerous disputed merits issues, such that an individual's membership in the class depends on the validity of the claims on the merits.

Accordingly, the action should be stayed or, in the alternative, dismissed.  In the event the action is not dismissed, the Court should strike the class definition.

## II.  STATEMENT OF FACTS

Plaintiff alleges that it received from Defendants two unsolicited fax advertisements:  one on March 25, 2015, and one on March 31, 2015.  *See* Class Action Compl. (June 24, 2015) ("Compl.") ¶¶ 12-17, Dkt. No. 1.  The faxes are attached to Exhibit A and are incorporated by reference into the Complaint.  *Id.*[1]

---

[1]   In considering a motion to dismiss under Rule 12(b)(6), the "court may properly consider exhibits attached to the complaint."  *In re 5-hour Energy Mktg. & Sales Practice Litig.*, No. MDL 13-2438 PSG (PLAx), 2014 WL 5311272, at *5 (C.D. Ca. Sept. 4, 2014), *citing Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

The March 25th fax states, in part:  "You are cordially invited to:  <u>Saving and Investing 20/20</u> For Medical Professionals."  *See* "March 25th Fax," attached as Exhibit A to Compl., Dkt. No. 1-1.  The invitation sets forth two alternate workshop dates, and invites the attendees to learn how to "better structure your practice and your personal affairs."  *Id.*  To RSVP, the recipient is provided a phone number and email address; no website address was provided.  There is a small New York Life logo next to the RSVP information.  *Id.*  The invitation also states:  "We will be sharing strategies and techniques that you can discuss with your legal and tax advisors."  *Id.*  The March 31st fax notes that the "practical workshop" is free of charge for attendees.  *See* "March 31st Fax," attached as Exhibit A to Compl., Dkt. No. 1-1.

The Complaint offers little in the way of specific factual allegations, which are limited to the following conclusory assertions:  the Faxes "promote[] the services and goods of Defendants" (Compl., ¶ 2); "Exhibit A is part of Defendants' work or operations to market Defendants' goods or services" (*Id.* at ¶ 14); "Defendants created or made Exhibit A which Defendants knew or should have known is a good or product" (*Id.* at ¶ 13); the Faxes "constitute[] advertisements under the Act" (*Id.* at ¶ 31); and "Defendants have sent [faxes] . . . that constitute advertisements." (*Id.* at ¶ 32).  Plaintiff does not allege whether any goods, products, or services were advertised within the Faxes or at the workshops (which never took place), and does not allege what Defendants were trying to advertise.

The Complaint also fails to allege any details that would show which, if either, Defendant(s) was allegedly responsible for the Faxes and/or how that Defendant(s) was allegedly responsible for the alleged violation of the TCPA.  Plaintiff alleges that "Defendants transmitted" the faxes and that "[o]n information and belief, Defendants faxed the same and other unsolicited facsimiles to Plaintiff."  Compl., ¶¶ 12 & 16. The Complaint, however, makes no distinction between Defendant NY Life & Annuity and Defendant NYLife Securities, nor does it identify which Defendant(s) purportedly "created or made" the Faxes or which Defendant(s) "transmitted" the

Faxes.  Compl., ¶¶ 12-13.  Nor does the Complaint allege on whose behalf the Faxes were allegedly sent.

Nearly three months after the alleged receipt of the Faxes, Plaintiff filed this lawsuit, in which it seeks to represent a class that includes:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, or (4) which did not display a proper opt-out notice.

Compl., ¶ 19.  Plaintiff alleges, entirely on information and belief, that Defendants have committed other purported violations of the TCPA by sending faxes to more than 40 other individuals.  *Id.* at ¶¶ 16, 32.  No explanation is provided how Plaintiff arrived at the number 40 or how that number is determinative or dispositive of any of the material substantive or procedural allegations in this case.

On August 7, 2015, Defendants made Plaintiff an Offer of Judgment, pursuant to Federal Rule of Civil Procedure 68, offering Plaintiff full and complete relief. Decl. of Scott Hyman, Ex. 1 ("Offer of Judgment").  Defendants offered monetary relief in excess of what Plaintiff would be able to recover even if it receives an award of treble damages—plus attorney's fees, which are not otherwise recoverable.  The Offer of Judgment also provides injunctive relief on an individual basis.  Accordingly, the Offer of Judgment more than fully satisfies Plaintiff's individual claims in this case.

## III.  ARGUMENT
### A.   Motion To Dismiss For Lack Of Subject Matter Jurisdiction Or, In The Alternative, Motion To Stay

This Court lacks subject matter jurisdiction to hear Plaintiff's claims for two independent reasons:  (1) Plaintiff's claims are moot, because Defendants have made

an Offer of Judgment under Federal Rule of Civil Procedure 68 that more than fully satisfies Plaintiff's individual claims against Defendants, and (2) Plaintiff lacks Article III standing because it alleges only a technical statutory violation combined with, at most, *de minimis* injury that fails to rise to the level of actual, concrete injury-in-fact.  As discussed below, the Supreme Court recently granted *certiorari* in two cases from the Ninth Circuit that bear directly on these two issues, and the Court should therefore stay this matter pending the Supreme Court's rulings before addressing the jurisdictional issues presented in this case.

### 1.   A Stay in This Case is Warranted Due to Pending Supreme Court Proceedings

Defendants move to stay this action pending the U.S. Supreme Court's resolution of *Gomez v. Campbell-Ewald* and *Robins v. Spokeo.  Campbell-Ewald,* 135 S. Ct. 2311 (*cert. granted*); *Spokeo,* 135 S. Ct. 1892 (*cert. granted*).  In *Campbell-Ewald* (oral argument set for October 14, 2015), the Supreme Court will decide whether a class action is mooted when the plaintiff receives an offer of complete relief on his individual claims pursuant to Rule 68.  In *Spokeo*, the Supreme Court will decide whether a plaintiff has standing to sue based solely on a violation of a federal statute without any accompanying concrete, non-*de minimis* injury in fact. Either of these two cases, both from the Ninth Circuit, may conclusively determine whether this Court has subject matter jurisdiction to hear Plaintiff's claims.

Entry of a stay is appropriate in this case because the significant time, expense, and resources required to litigate this case on the merits will be wasted if the Supreme Court rules either that a plaintiff's claims are mooted by an offer of judgment affording complete relief or that a plaintiff lacks Article III standing to bring suit based solely on allegations of a statutory violation (or both).  This Court may stay this action to avoid such unnecessary expenditures of time and resources.  *See*, *e.g.*, *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

12578.0001/4738017.1                                                5                                              2:15-cv-04767 AB (JCx)

MEMO OF P's & A's i/s/o MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS DEF.

Other factors also favor a stay. The length of a stay would be neither indefinite nor overly lengthy, because the Supreme Court has already granted *certiorari* on the two relevant cases, which means that a decision is expected within a year, or less. Indeed, oral argument in *Campbell-Ewald* is already set for October 14, 2015, and a decision may be rendered before the end of the year. Plaintiff will not be unduly prejudiced or harmed by a stay of proceedings, which only stands to delay the case for a period of less than twelve months. Conversely, without a stay, Defendants could be forced to incur significant litigation expenses, which would be wasted if the Supreme Court rules favorably for the defendant in either case.

Finally, there is a public interest in judicial economy and efficiency, which will be promoted by a stay of these proceedings. A modest stay here will free up judicial resources without any unfair prejudice or burden on the Plaintiff. Other federal district courts have granted stays in TCPA class actions pending *Campbell-Ewald* and *Spokeo*. *See, e.g., Wolf v. Lyft, Inc.*, No. C 15-01441 JSW, 2015 WL 4455965, at *3 (N.D. Cal. July 20, 2015) (staying TCPA action pending U.S. Supreme Court's decision in *Campbell-Ewald*); *Boise v. ACE USA, Inc.*, No. 15-CV-21264, 2015 WL 4077433, at *7 (S.D. Fla. July 6, 2015) (staying TCPA action pending *Campbell-Ewald* and *Spokeo*). Accordingly, the Court should grant a stay of this action pending the U.S. Supreme Court's rulings in *Campbell-Ewald* and *Spokeo*.

### 2. Plaintiff's Claims are Moot (*Campbell-Ewald*)

In *Campbell-Ewald*, the Supreme Court will address the following questions directly applicable to this case: (1) whether a case becomes moot, and thus beyond the judicial power of Article III, when the plaintiff receives an offer of complete relief on his claim; (2) whether the answer to the first question is any different when the plaintiff has asserted putative class claims and receives an offer of complete relief before any class is certified. 135 S. Ct. 2311. Similar to this case, *Campbell-Ewald* is a TCPA putative class action where the defendant made an offer of judgment that fully satisfied the plaintiff's individual claims. Depending on the ruling in *Campbell-*

1  *Ewald*, Plaintiff's claims in this case may be moot as a result of the Offer of

2  Judgment.

3  A court lacks jurisdiction to hear moot claims, which should be dismissed

4  under Federal Rule of Civil Procedure 12(b)(1).  *Pitts v. Terrible Herbst, Inc.*, 653

5  F.3d 1081, 1086-87 (9th Cir. 2011).  The "case-or-controversy requirement [of

6  Article III of the Constitution] subsists through all stages of federal judicial

7  proceedings," and the mootness doctrine ensures that parties "continue to have a

8  'personal stake in the outcome' of the lawsuit" throughout its duration.  *Spencer v.*

9  *Kemna*, 523 U.S. 1, 7 (1998).  Accordingly, "an actual controversy must be extant at

10 all stages of review," and "[i]f an intervening circumstance deprives the plaintiff of a

11 'personal stake in the outcome of the lawsuit,' at any point during litigation, the

12 action can no longer proceed and must be dismissed as moot."  *Genesis Healthcare*

13 *Corp. v. Symczyk*, 133 S. Ct. 1523, 1528-29 (2013) (assuming without deciding "that

14 petitioners' Rule 68 offer mooted [the plaintiff's] individual claim").

15 In this case, Defendants have made an Offer of Judgment to Plaintiff under

16 Rule 68 that more than fully satisfies Plaintiff's individual claims.  Defendants offered

17 monetary relief in excess of what Plaintiff would be able to recover as damages under

18 any scenario, plus injunctive relief on an individual basis, plus attorney's fees, which

19 would not even be recoverable.  Under *Genesis Healthcare*, an offer of judgment that

20 fully satisfies the plaintiff's claims renders the claims moot and precludes the plaintiff

21 from proceeding with a lawsuit in federal court on behalf of either himself or on

22 behalf of a putative class.  *Id.*  As discussed above, however, consideration of this

23 issue should be stayed pending *Campbell-Ewald*.

24 **3.      Plaintiff Lacks Article III Standing (*Spokeo*)**

25 In *Robins v. Spokeo*, the Supreme Court will resolve the issue of whether a

26 plaintiff who alleges a statutory violation but who fails to allege a concrete injury in

27 fact has standing to pursue allegations based on a breach of that statute.  135 S. Ct.

28 1892.  In *Spokeo*, the plaintiff alleged violations of the Fair Credit Reporting Act,

12578.0001/4738017.1                                    7                          2:15-cv-04767 AB (JCx)

MEMO OF P's & A's i/s/o MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS DEF.

15 U.S.C. § 1681 *et seq.*, but the Supreme Court's resolution of the standing issue in *Spokeo* is expected to apply to claims brought under other federal statutes, such as the TCPA, where plaintiffs often seek statutory damages without suffering concrete injuries.

If a plaintiff lacks standing, the federal court lacks subject matter jurisdiction to hear the claim.  To establish standing (and thus federal jurisdiction) under Article III, a plaintiff bears the burden of showing that he

> (1) . . . has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

The injury-in-fact requirement is the "irreducible constitutional minimum" for standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Because the injury-in-fact requirement "is a hard floor of Article III jurisdiction," it "cannot be removed by statute."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).  "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997), *citing Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979).  Moreover, the Supreme Court has "always insisted on strict compliance with this jurisdictional standing requirement."  *Id.* at 819.  As the Court has recently cautioned, "[i]n an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so."  *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1449 (2011).  To have standing, a plaintiff must do more than allege a mere statutory violation; instead,

1  a plaintiff must show that the alleged violation caused "concrete and particularized"

2  harm.  *Friends of the Earth*, 528 U.S. at 180; *Lujan*, 504 U.S. at 560.

3         In this case, Plaintiff cannot plead a cognizable injury in the Complaint and the

4  claims should therefore be dismissed for lack of standing.  At its essence, Plaintiff's

5  claim is based solely on an alleged bare statutory violation of the TCPA, without a

6  sufficiently concrete injury.  Plaintiff contends receipt of the Faxes caused a loss of

7  "paper and toner," use of the "telephone lines and fax machine," and wasted time

8  reviewing the Faxes.  Compl., ¶ 36.  Such alleged injuries are less than *de minimis*,

9  however, and do not rise to the level of a concrete and particularized harm.  *See*

10  *Caldwell v. Caldwell*, 545 F.3d 1126, 1133 (9th Cir. 2008) (asserted interest too

11  minimal to confer standing); *Gonzales v. Comcast Corp.*, No. 10-CV-01010, 2012

12  WL 10621, at *7 (E.D. Cal. Jan. 3, 2012) report and recommendation adopted, 2012

13  WL 217708 (E.D. Cal. Jan. 23, 2012) (on claims for inadequate refunds, plaintiff's

14  minimal alleged damages insufficient to confer standing); *accord:  Larson v. Valente*,

15  456 U.S. 228, 241 (1982) (finding sufficient injury in fact where effect of challenged

16  statute was "hardly *de minimis*").  Accordingly, the Complaint should be dismissed

17  for lack of standing.

18         The Court need not decide the standing issue now, because the Supreme

19  Court's decision in *Spokeo* may reverse Ninth Circuit precedent on this issue.

20  Therefore, as with the issue of mootness, the Court should await guidance from the

21  Supreme Court before ruling on Defendants' motion to dismiss on standing grounds.

22
   **B.     Motion To Dismiss Under Rule 12(b)(6) For Failure To State A Claim
23           That The Faxes Are Advertising**

24         To state a plausible claim for relief, Plaintiff must do more than make general

25  and conclusory allegations that the Faxes constitute advertisements in violation of the

26  TCPA.  Plaintiff does not allege facts which, if proven, would show that the Faxes

27  were either:  (1) advertisements as defined by the TCPA; or (2) promoting a workshop

28

that itself was a mere pretext to advertisement.  As a result, Plaintiff fails to state a claim upon which relief may be granted and its Complaint should be dismissed.

### 1.     Legal Standard Under Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), Plaintiff's Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is "plausible on its face" only if Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This requires more than mere "labels and conclusions," and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 664 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").  It is not proper to assume that Plaintiff "can prove facts that it has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Furthermore, courts have found that the TCPA inflicts "draconian penalties." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 915 (7th Cir. 2011).  Due to the punitive nature of the statute, it should therefore be "narrowly construed." *United States v. Vanoosterhout*, 898 F. Supp. 25, 30 (D.D.C. 1995).

### 2.     Plaintiff Must Establish That the Faxes are "Advertisements" Under the TCPA

The Complaint should be dismissed for failure to state a claim because the Faxes are not advertisements under the TCPA.  The TCPA generally makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C).  It is also unlawful to send an unsolicited fax advertisement without a proper opt-out notice. *Id.*  Accordingly, to prevail on its claims, Plaintiff must

establish, among other things, that the Faxes are advertisements.  As discussed below, numerous courts have addressed this issue at the motion to dismiss stage and have dismissed complaints where it could be determined as a matter of law that the faxes at issue were not advertisements.  *See*, *e.g.*, *N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 F. App'x 640 (9th Cir. 2012) (affirming dismissal under Rule 12(b)(6)).

The TCPA defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services."  47 U.S.C. § 227(a)(5).  The Ninth Circuit has held that "commercial availability" as defined in the TCPA means that the goods, property, or services "must be available to be bought or sold (or must be a pretext for advertising a product that is so available)."  *N.B. Indus.*, 465 F. App'x at 642.  The Federal Communications Commission ("FCC"), which administers the TCPA and enacts rules and regulations, has stated that "messages that do not promote a commercial product or service … are not unsolicited advertisements under the TCPA."  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*; *Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967-01, 25974 (May 3, 2006) ("FCC Final Rule") (attached as Exhibit 2 to S. Hyman Declaration).

It is therefore up to this Court "to determine whether the purpose of the communication was to promote a good or service, or in contrast, was informational" and thus not actionable.  *Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*, Civil Action No. 1:09-CV-1076-RWS, 2011 WL 553826, at *3-4 (N.D. Ga. Feb. 7, 2011).  While the FCC has stated that prohibited faxes may include offers for "free consultations or seminars," those "messages must still 'promote goods and services'" and there is not a blanket ban on such faxes. *Id.* (internal quotations and citations omitted).

The FCC's Final Rule cautions that "a reference to a commercial entity does not by itself make a message a commercial message," and an "incidental advertisement . . . does not convert the entire communication into an advertisement." FCC Final Rule, 71 Fed. Reg. 25967-01, at 25973 ("a company logo or business

12578.0001/4738017.1                                     11                          2:15-cv-04767 AB (JCx)

MEMO OF P's & A's i/s/o MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS DEF.

1 slogan . . . would not convert the communication into an advertisement, so long as the

2 primary purpose of the communication is, for example, to relay . . . information").

3     **3.      The Faxes are Not "Advertisements"**

4       The question for the Court is whether the Faxes are advertisements within the

5 meaning of the TCPA. *See*, *e.g.*, *Sandusky Wellness Ctr., LLC v. Medco Health*

6 *Solutions, Inc.*, 788 F.3d 218, 221 (6th Cir. 2015). The most analogous case to the

7 present matter is *Phillip Long Dang v. XLHealth*. In that case, the defendant

8 insurance company sent a fax to the plaintiff chiropractor advertising a free upcoming

9 seminar. The seminar was designed to provide instruction on the defendants' billing

10 and payment processes, and was to be taught by the defendant's representatives. The

11 court found that the fax did not constitute an advertisement under the TCPA because

12 this "type of communication does not detail the 'commercial availability or quality' of

13 the healthcare plan, but rather seeks to inform the recipient" and "nothing on the

14 communication [itself] seeks to sell insurance to the recipient." *Phillip Long Dang,*

15 *D.C., P.C.*, 2011 WL 553826, at *4.

16       Similarly, the Faxes at issue here do not "detail the 'commercial availability'"

17 of any of Defendants' services, nor do they offer to sell anything to Plaintiff. *See Id.*

18 Plaintiff certainly does not allege as much in the Complaint. Rather, the Faxes merely

19 describe a "free workshop" and "educational session." "Faxes", attached as Exhibit A

20 to Compl., Dkt. No. 1-1. This does not constitute advertising under the TCPA, and

21 the Complaint offers nothing more than conclusory allegations that the Faxes were

22 advertising. Compl., ¶ 14. Accordingly, the Complaint fails to state a claim under the

23 TCPA.

24       Other courts have dismissed similar suits where the challenged fax did not

25 constitute an advertisement. In *Physicians Healthsource, Inc. v. Janssen Pharm.,*

26 *Inc.*, No. 12-2132(FLW), 2013 WL 486207, at *4-5 (D.N.J. Feb. 6, 2013), the court

27 found that faxes sent by the defendant pharmaceutical company regarding updated

28 information on a drug it was selling were not "commercial" under the TCPA. The

12578.0001/4738017.1          **12**          2:15-cv-04767 AB (JCx)

MEMO OF P's & A's i/s/o MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS DEF.

court dismissed the plaintiff's claims despite the fact that the defendant could have received "some ancillary commercial benefit" in the future as a result of the fax. *Id.* The appearance of the defendant's name and marketing logos on the faxes, according to the court, did "not transform the faxes into advertisements." *Id.*

In *N.B. Indus., Inc.*, the Ninth Circuit upheld dismissal of the plaintiff's TCPA case, despite the fact that the fax at issue had advertising on the face of the document, and also directed recipients to the defendant's website, which was "almost entirely an advertisement." 465 F. App'x at 643. The court deemed it mere "incidental advertising" that was not enough to "transform faxes that were largely permissible into prohibited communications." *Id.*[2]

Plaintiff's TCPA claims fails as a matter of law because the Faxes are not "advertisements" designed to promote a good or service. Instead, the Faxes were invitations sent to a specific group – medical professionals – to invite them to a free informational workshop. The appearance of Defendants' logo and contact information on the March 25 Fax is merely incidental to its larger informational purpose. Any possible benefit to either of the Defendants is too circumstantial and attenuated to justify a finding of liability under the TCPA (and indeed, the contemplated workshops never even took place). Plaintiff's claims should therefore be dismissed.

### 4.     The Faxes are Not a Pretext to an Advertisement

Where a fax itself is not an advertisement, a plaintiff must allege (and demonstrate) that the fax is a pretext to an advertisement. *See Phillips Randolph*

---

[2]  *See also Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, No. 3:14-cv-405(SRU), 2015 WL 144728, at *5 (D. Conn. Jan. 12, 2015) ("the hypothetical future economic benefit that . . . defendants might receive someday does not transform the Fax into an advertisement" where a free dinner and seminar was offered to potential future customers, as long as a specific product was not advertised); *Sandusky Wellness Ctr.*, 788 F.3d at 222 ("call[ing] items . . . and services … to [defendant's] attention" via fax is not enough to constitute advertising under the TCPA). *Compare with Sadowski v. OCO Biomedical, Inc.*, No. 08 C 3225, 2008 WL 5082992, at *1-2 (N.D. Ill. Nov. 25, 2008) (fax from defendant advertised training course as a service at a cost of $295 per attendee).

1   *Enters., LLC v. Adler-Weiner Research Chi., Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill.

2   2007) (dismissing TCPA action where fax regarding a research study was not a

3   pretext to an advertisement).  Here, Plaintiff's Complaint does not even allege that the

4   fax was a pretext to an advertisement.

5       In *Addison Automatics, Inc. v. RTC Group, Inc.*, No. 12-C-9869, 2013 WL

6   3771423, at *3 (N.D. Ill. July 16, 2013), the court found that the defendant's fax was

7   a pretext for an advertisement because the plaintiff alleged "that the purpose of the

8   free seminar . . . was to market the products or services of Defendants."  Furthermore,

9   the fax contained a website address through which the plaintiff had to register for the

10  seminar.  The registration website advertised specific products to be discussed at the

11  seminar, and "describe[d] the conference as making product launches from [the

12  defendants]."  *Id.*; *see also St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, No. 4:12-

13  CV-02224, 2013 WL 1076540, at *4 (E.D. Mo. Mar. 13, 2013) (holding that a pretext

14  existed where "there is enough in the way of product-driven content in the fax

15  messages" to raise a specter of pretext, the fax specifically identified a drug to treat

16  hypertension sold by defendant, and the seminar's topic was treating hypertension);

17  *see also Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12 C 4978, 2012 WL

18  4120506, at *2 (N.D. Ill. Sept. 18, 2012) (finding that plaintiff specifically alleged

19  that defendant's seminar was a pretext).

20      In its Complaint, Plaintiff does not make any factual allegations (or even

21  conclusory statements) that suggest the workshop discussed in the Faxes was a pretext

22  to advertising.  That alone justifies dismissal.

23      Setting aside the failure of pleading, a review of the Faxes themselves requires

24  dismissal of Plaintiff's claims as a matter of law.  Perhaps most importantly, it is

25  unclear from the allegations in the Complaint or the Faxes themselves what it is that

26  Defendants were supposedly advertising.  The Faxes do not suggest that any goods,

27  services, or products would be on offer at the workshop.  In fact, one of the Faxes

28  explicitly states that the workshop would offer "strategies and techniques that you can

12578.0001/4738017.1                    14                    2:15-cv-04767 AB (JCx)

MEMO OF P's & A's i/s/o MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS DEF.

discuss with your legal and tax advisors." *See* "March 25th Fax," attached as Exhibit A to Compl., Dkt. No. 1-1. The language of the Faxes confirms that the workshops were informational, and not a pretext to an advertisement. The Faxes are not "an indiscriminate, open-ended invitation" sent to the general public, but are directed specifically at "Medical Professionals." *Phillips Randolph Enters.*, 526 F. Supp. 2d at 853. Moreover, potential attendees to the workshop could only RSVP via email, and were not directed to a website containing advertisements or promotional materials. Accordingly, the Faxes were neither advertisements nor a pretext to advertisement, and Plaintiffs' claims should therefore be dismissed.

## C. Motion To Dismiss For Failure To Adequately Allege Defendants' Responsibility For The Faxes

The Complaint should also be dismissed under Rule 12(b)(6) for failure to include more than conclusory and formulaic allegations about Defendants' alleged responsibility for the Faxes. Plaintiff's TCPA claim is insufficiently pleaded because the Complaint is devoid of any facts alleging which, if either, of the Defendants was allegedly responsible for the Faxes and/or how that Defendant was allegedly responsible. Although each of the Faxes contains contact information for a "Financial Services Professional" with New York Life, the Complaint itself makes only a conclusory allegation that "Defendants transmitted" the Faxes. This conclusory allegation is insufficient to state a claim where the Complaint fails to allege how the Faxes were "transmitted," who exactly transmitted them, or whether either Defendant(s) knew of the transmission or authorized it. *See Iqbal*, 556 U.S. at 678.

In a recent decision in a case brought by this same Plaintiff, by the Plaintiff's same counsel, and alleging unlawful faxes transmission, this Court observed that "[i]t is not enough under [Rule 8] for Plaintiff to offer conclusory allegations that 'Defendants' sent Plaintiff a fax, Plaintiff must plead '*factual content* that allows the court to draw the reasonable inference that' each of the three defendants are independently liable." Order, *Fromer Chiropractic v. SpendWell Health, Inc.*, CV14-

08728-AB (C.D. Cal. Feb. 11, 2015) at 6, Dkt. No. 34 (emphasis in original) (*quoting Iqbal*, 555 U.S. at 678). In that case, this Court dismissed claims against certain Defendants where the Plaintiff had "lump[ed] all 'Defendants' into a single unit and alleg[ed] that the indivisible 'Defendants' sent Plaintiff the fax" while failing "to allege that factual basis for each defendant's liability." *Id.*, *quoting Wright v. City of Santa Cruz*, Case No. 13-cv-1230-BLF, 2014 WL 5830318, at *5 (N.D. Cal. Nov. 10, 2014). This present case is no different, because the only place in the Complaint where Defendants are separately identified is in an introductory section listing the names of the parties. Compl., ¶¶ 9-10.

Instead, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Under the TCPA, a plaintiff may establish liability against defendant under a theory of either direct or vicarious liability. To establish direct liability under the TCPA for unlawful facsimiles, a plaintiff must show that defendant was the person or entity "on whose behalf facsimiles are transmitted." *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1257-58 (11th Cir. 2015) (finding question of fact where fax was sent by third party and "may not have been approved by Defendant."[3] To establish vicarious liability, the plaintiff must establish "an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014) *cert. granted on other issues*, 135 S. Ct. 2311 (2015). This requires a showing of classical agency (*i.e.*, control), apparent authority, and/or ratification. *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014).[4] In *Taco Bell*, the Ninth Circuit

---

[3] The FCC has defined a "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. 64.1200(f)(10).

[4] Classical agency applies where the defendant "controlled the actions of [an agent] with respect to the campaign." *Taco Bell Corp.*, 582 F. App'x at 679. Apparent authority must "be established by proof of something said or done by the [alleged principal], on which [the

1    held that the defendant was not vicariously liable under the TCPA where it had

2    neither controlled nor ratified the actions of the parties who sent the text messages at

3    issue and where those parties were not acting as the defendant's authorized agents.

4           In this case, Plaintiff has failed to adequately allege either direct or vicarious

5    liability against either Defendant.  Other than a vague and conclusory statement using

6    the phrase "on behalf of" (Compl., ¶ 14),[5] the Complaint lacks allegations of any

7    specific facts regarding whether either Defendant controlled the content of the Faxes,

8    authorized the Faxes, or that the Faxes were sent as part of a broader campaign

9    initiated by or directed by either Defendant.  *See Palm Beach Golf Center*, 781 F.3d at

10   1257-58 (articulating standard for whether fax was sent "on behalf of" a defendant).

11   Indeed, the formulaic nature of Plaintiff's allegations is illustrated by the fact that the

12   law firm representing Plaintiff routinely includes cookie-cutter allegations on this

13   element (word-for-word) in unrelated TCPA fax cases against unrelated defendants

14   arising out of unrelated events.  *See*, *e.g.*, Compl., *Fromer Chiropractic v. SpendWell*

15   *Health, Inc.*, CV14-08728-AB (C.D. Cal. Nov. 11, 2014) ¶ 13, Dkt. No. 1.[6]  Likewise,

16   the Complaint fails to allege any of the elements of a vicarious liability theory and

17   includes no factual allegations whatsoever to support vicarious liability, including

18   whether the Faxes were sent through a third-party agent, whether either Defendant

19   controlled the Faxes, whether Plaintiffs reasonably relied on alleged apparent

20   authority, or whether either Defendant ratified the sending of the Faxes by obtaining

21   and then retaining some benefit.

22

23

24   plaintiff] reasonably relied." *Id.*  Finally, a principal can be liable if it ratifies an originally
     unauthorized tort, such as by retaining a benefit. *Id.* at 680.

25   [5]  Compl., ¶14 ("Exhibit A is part of Defendants' work or operations to market Defendants'
26   goods or services which were performed by Defendants and on behalf of Defendants.")
     (emphasis added).

27   [6]  *See also* Compl., *Env. Progress v. Storick*, No. 9:12-cv-80907 (S.D. Fla. Aug. 24, 2012)
     ¶ 18, Dkt. No. 1; Compl., *Env. Progress v. Campbell*, No. 3:15-cv-3128 (D.S.C. Aug. 10,
28   2015) ¶14, Dkt. No. 1.

Because Plaintiff alleges no such facts regarding either direct or vicarious liability issues, and instead merely parrots a conclusory allegation that the Faxes were made "on behalf of" Defendants, the Complaint fails to do anything more than provide a vague defendant-unlawfully-harmed-me accusation. As the Supreme Court has explained, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's formulaic pleading fails to state a claim under Rule 12(b)(6) and the Complaint should therefore be dismissed.

### D.    Plaintiff's § 17538.43 Claim Is Preempted By The TCPA And Should Be Dismissed

Plaintiff's claim under Cal. Bus. & Prof. Code § 17538.43 should be dismissed for the same reasons as the TCPA claim, as Plaintiff makes no allegations of fact or law separate and apart from its TCPA claim. Plaintiff's § 17538.43 claim fails for the independent reason that it is preempted by the TCPA, "with respect to its interstate reach," as Plaintiff appears to be attempting to bring claims on behalf of a national class against a foreign corporation. *See Chamber of Commerce of the U.S. v. Lockyer*, No. 2:05-CV-2257, 2006 WL 462482, at *9 (E.D. Ca. Feb. 27, 2006). Accordingly, the claim under § 17538.43 should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### E.    Motion To Strike The Class Definition

In the event this case is not dismissed in its entirety for failure to state a claim, the Court should strike the class definition for alleging an impermissible fail-safe class. The Federal Rules of Civil Procedure provide a mechanism for excising defective class allegations at the pleadings stage. Class certification must be decided at "an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Under Rule 23(d)(1)(D), the Court may issue an order "require[ing] that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R.

1   Civ. P. 23(d)(1)(D).  Joined together, these rules authorize the Court "to strike class

2   allegations prior to discovery if the complaint demonstrates that a class action cannot

3   be maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010).

4       "Most courts recognize that a motion to strike class action allegations may

5   properly be filed before plaintiffs have filed a motion for class certification."

6   *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *2 (S.D.

7   Ohio May 7, 2014) (citing 1 McLaughlin on Class Actions § 3:4 (10th ed. 2013).)[7]

8   "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and

9   money that must arise from litigating spurious issues by dispensing with those issues

10  prior to trial...."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) rev'd

11  on other grounds, 510 U.S. 517 (1994) (citations and internal quotation marks

12  omitted); *see also Kamm v. California City Development Co.*, 509 F.2d 205, 207-212

13  (9th Cir. 1975).  "Sometimes the issues are plain enough from the pleadings to

14  determine whether the interests of absent parties are fairly encompassed within the

15  named plaintiff's claim" or whether the action is inappropriate for class certification

16  for other reasons.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982).  In those

17  instances, "[t]he court need not wait for a motion for class certification."  *Stubbs v.*

18  *McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004).  Many courts have

19  entertained and granted motions by defendants at the pleading stage to dispose of

20  futile class allegations.[8]

---

[7]  *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 988 (N.D. Cal. 2014)
("Nevertheless, courts in this district sometimes strike class allegations with leave to amend
when the face of the complaint shows conclusively that the proposed class cannot be
certified."); *Lyons v. Bank of Am., NA*, Case No. 11–1232 CW, 2011 WL 6303390, at *6–7
(N.D. Cal. Dec. 16, 2011) (striking class allegations with leave to amend because allegations
showed that the proposed class was not ascertainable); *Dodd-Owens v. Kyphon, Inc.*, No. C
06-3988 JF (HRL), 2007 WL 420191, at *3 (N.D. Cal. Feb. 5, 2007).

[8]  *See*, *e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011)
(affirming the district court's judgment striking class allegations and dismissing a lawsuit
prior to discovery); *Thompson v. Merck & Co.*, No. C.A. 01-1004, 2004 WL 62710, at *5

In this case, the Complaint alleges an impermissible fail-safe class. A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). With a fail-safe class, the class membership is not defined unless and until the liability of the defendant is established. *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). The Sixth and Seventh Circuits have expressly held that fail-safe classes are precluded from certification. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012); *Messner*, 669 F.3d 802. And the Ninth Circuit has recognized the "obvious problems" with fail-safe classes that make them "palpably unfair" and "unmanageable." *Kamar*, 375 F. App'x at 736   Numerous federal district courts in California have rejected fail-safe classes. *See*, *e.g.*, *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (granting motion to strike class allegations where the proposed class was a fail-safe class that could not be ascertained where identifying the proposed class members would require the court to make a legal determination as to defendant's liability); *Ubaldi v. SLM Corp.*, No. 11-01320 EDL, 2014 WL 1266783, at *6 (N.D. Cal. Mar. 24, 2014) (denying certification of "circular" class definition); *see also Panacci v. A1 Solar Power, Inc.*, Case No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) (recognizing the propriety of striking fail-safe class definition in a TCPA action, and citing various cases, but concluding that the class definition at issue was not fail safe).

In this case, the proposed class definition is a fail-safe class because it incorporates within it numerous disputed merits issues, such that an individual's membership in the class depends on the validity of the claims. Specifically, the alleged class definition includes persons "from whom Defendants did not obtain prior express permission or invitation to send those faxes." Compl. ¶ 19. Not only is the

(E.D. Pa. Jan. 6, 2004); *In re Old Kent Mortgage Co. Yield Spread Premium Litig.*, 191 F.R.D. 155, 164 (D. Minn. 2000).

1   question of permission/ invitation a merits issue that would need to be resolved to

2   determine any given individual's membership in the class, but it is also an

3   individualized issue that would make the class determination unascertainable and

4   unmanageable.  *Kamar*, 375 F. App'x at 736 (recognizing that fail-safe class

5   requiring individualized inquiry to determine membership would be unmanageable—

6   "to whom should the class notice be sent?").  In addition, the class definition requires

7   a proposed class member to have received fax "advertising" sent "on behalf of

8   Defendants."  If, however, Defendants prevail on either of these issues at any point in

9   the litigation—*i.e.*, if the fax is not advertising or was not sent on behalf of

10   Defendants—then Plaintiff's class would evaporate because it is dependent on the

11   merits of the substantive claims.

12        For these reasons, the class definition in this case is similar to class definitions

13   in other cases where courts struck impermissible fail-safe classes.  *See Lindsay*

14   *Transmission, LLC v. Office Depot, Inc.*, No. 4:12–CV–221 CEJ, 2013 WL 275568,

15   at *3-4 (E.D. Mo. Jan. 24, 2013) (striking class definition as fail-safe, where TCPA

16   class was defined in part as all persons who "were sent telephone facsimile messages

17   of material advertising the commercial availability of any property, goods, or services

18   by or on behalf of Defendant [and] with respect to whom Defendant cannot provide

19   evidence of prior express permission or invitation for the sending of such faxes [and]

20   with whom Defendant does not have an established business relationship"); *G.M.*

21   *Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2007 WL 4365359, at *3 (N.D. Ill.

22   Dec. 13, 2007) (striking a class definition in TCPA action where the class included

23   persons who were sent an "unlawful fax message" and for whom the defendant

24   "cannot provide evidence of ... permission or invitation for the fax to be sent");

25   *Sauter v. CVS Pharmacy, Inc.*, No. 2:13–CV–846, 2014 WL 1814076, at *8-9 (S.D.

26   Ohio May 7, 2014) (class definitions in TCPA action were fail-safe because they were

27   restricted to "only those individuals who did not expressly consent to the receipt of

28

the defendant's phone calls made with the use of an ATDS" and thus consisted "solely of persons who can establish that defendant violated the TCPA").

Because the alleged class definition in this case is dependent on the resolution of merits issues, Defendants request that the Court strike the class definition as an impermissible fail-safe class.

## IV.

## CONCLUSION

For the reasons set forth above, this action should be stayed until the U.S. Supreme Court clarifies the standards for standing and mootness in two pending cases on which it has granted *certiorari*.  In the alternative, Plaintiff's putative Class Action Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and on mootness grounds and also pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  In the event the action is not dismissed, the Court should strike the class definition pursuant to Rule 12(f).

DATED:  August 20, 2015

SEVERSON & WERSON
A Professional Corporation


By:  _____
*/s/ Scott J. Hyman*
Scott J. Hyman

Attorneys for Defendants
NEW YORK LIFE INSURANCE AND
ANNUITY CORPORATION and NYLIFE
SECURITIES LLC

DATED:  August 20, 2015

SUTHERLAND ASBILL & BRENNAN, LLP


By:  _____
*/s/ Lewis S. Wiener*
Lewis S. Wiener

Attorneys for Defendants
NEW YORK LIFE INSURANCE AND
ANNUITY CORPORATION and NYLIFE
SECURITIES LLC