# GERAGOS & GERAGOS

### A PROFESSIONAL CORPORATION
### LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 625-1600
Geragos@Geragos.com

MARK J. GERAGOS SBN 108325
(mark@geragos.com)
BEN J. MEISELAS SBN 277412
(meiselas@geragos.com)

Local Counsel for Plaintiff and the Proposed Class

Brian J. Wanca (*pro hac vice*)
(bwanca@,andersonwanca.com)
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368- 1500
Fax: 847-368-1501

Counsel for Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC B. FROMER CHIROPRACTIC, INC., a California corporation, individually and as the representative of a class of similarly-situated persons,<br><br>                    Plaintiff,<br><br>        v.<br><br>NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, NYLIFE SECURITIES LLC, and JOHN DOES 1-10,<br><br>                    Defendants. | **Case No.: 2:15-cv-04767 AB**<br><br>**Hon**. **Andre Birotte Jr.**<br><br>**CLASS ACTION**<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:          January 23, 2017<br><br>Time:          10:00 a.m.<br><br>Courtroom: 4 |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on (date) or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Andre Birotte, Jr., United States District Court, Central District of California, Plaintiff Eric B. Fromer Chiropractic. Inc., will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for the entry of an Order as follows:

1.    Preliminarily approving the Settlement Agreement between Plaintiff Eric B. Fromer Chiropractic. Inc. and Defendants New York Life Insurance and Annuity Corporation and NYLIFE Securities, LLC;

2.    Approving the form of Class Notice attached as Exhibit 2 to the Settlement Agreement and its dissemination to the Settlement Class by fax; and

3.    Setting a schedule for the final approval process.

This motion is made on the grounds that the proposed settlement is within the necessary range of reasonableness to justify granting the preliminary approval.

This is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Brian J. Wanca, the pleadings and papers on file in this action, and any oral and documentary evidence that may be presented at the hearing on this motion.

1    November 11, 2016                         Respectfully submitted,

2

3                                             ANDERSON + WANCA

4                                             s/ Brian J. Wanca
                                              _____
5                                             Brian J. Wanca
                                              One of the Attorneys for Plaintiff, Eric B.
6                                             Fromer Chiropractic, Inc., individually and
                                              the representative of a class of similarly
7                                             situated persons

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF CONTENTS......................................................................................i

TABLE OF AUTHORITIES ...........................................................................iii

I.   INTRODUCTION ...................................................................................1

II.  Factual and Procedural history ...............................................................2

III. Summary of the settlement. ....................................................................3

    a.   Certification of a Settlement Class..................................................4

    b.   The Class Representative and Class Counsel...................................4

    c.   Monetary Relief to the Members of the Settlement Class ...............5

    d.   Class Notice ...................................................................................5

    e.   Claims.............................................................................................5

        (i)   Claim Form..........................................................................5

        (ii)  Claims Administrator ..........................................................6

    f.   Release............................................................................................7

    g.   Attorney's Fees and Costs and Class Representative Award .........7

IV. The Court should grant preliminary approval to the Class Settlement ...............7

    A.   Standard for Preliminary Approval ................................................7

    B.   The Proposed Settlement Meets the Standard for Preliminary
        Approval .........................................................................................9

**TABLE OF CONTENTS (cont'd.)**

**Page**

V.  Conditional Class Certification is Appropriate for Settlement Purposes.......11

    A.  The Court should preliminarily certify the Settlement Class. ...............11

        1.  The class is sufficiently numerous. ...................................................12

        2.  There are common questions of law or fact .....................................12

        3.  Plaintiffs' claims are typical.............................................................13

        4.  Plaintiff and their counsel will fairly and adequately represent
           the class...........................................................................................14

    B.  The proposed class may be maintained under Rule 23(b)(3)................15

        1.  Certification is appropriate under Rule 23(b)(3) because
           common questions predominate and a class action is the
           superior method of adjudication.......................................................15

VI.  The Proposed Notice Plan Meets the Requirements of Rule 23 ...............17

VII.  Attorneys' Fees and Costs and an Award to Plaintiff................................18

VIII.  The Court should schedule a final fairness hearing ..................................19

IX. Conclusion .................................................................................................20

ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

<u>Page</u>

**CASES**

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935, 941 (9th cir. 2011)..................................................................18

*Booth v. Appstack, Inc.,*
    2016 WL 3030256, at *5–6 (W.D. Wash. May 25, 2016)................................3

*Boyd v. Bank of Am. Corp.,*
    2014 WL 2925098, at *6 (C.D. Cal. June 27, 2014)..................................14, 18

*Brodsky v. HumanaDental Ins. Co.,*
    2016 WL 5476233, at *11 (N.D. Ill. Sept. 29, 2016)........................................3

*Bruno v. Quten Res. Inst., LLC,*
    280 F.R.D. 524, 533 (C.D. Cal. 2011). ............................................................12

*Campbell-Ewald Co. v. Gomez,*
    136 S. Ct. 663 (2016) ........................................................................................3

*Chapman v. Wagener Equities, Inc.,*
    2014 WL 540250 *16 (N.D. Ill. Feb. 11, 2014)...............................................16

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566, 575, 576 (9th Cir. 2004) ......................................................8, 17

*Class Plaintiffs v. City of Seattle,*
    995 F.2d 1268, 1276 (9th Cir. 1992) ..................................................................8

*Cour v. Life360, Inc.,*
    2016 WL 4039279, at *1 (N.D. Cal. July 28, 2016);.........................................3

*Critchfield Physical Therapy v. Taranto Grp., Inc.,*
    263 P.3d 767, 778 (Kan. 2011) .......................................................................16

1

**TABLE OF AUTHORITIES (cont'd.)**

2
<u>Page</u>

3

4   *Ellis v. Costco Wholesale Corp*.,

5      657 F.3d 970, 984 (9th Cir. 2011) ................................................... 13

6   *Fauley v. Drug Depot, Inc.*,

7      --- F. Supp. 3d ---, 2016 WL 4591831, at *3 (N.D. Ill. Aug. 31, 2016) ............................................................................................... 3

8

9   *Franco v. Ruiz Food Prods., Inc*.,
   2012 WL 5941801, at *6 (E.D. Cal. Nov. 27, 2012) ....................... 13

10

11   *Green v. Service Master On Location Services, Corp.*,
   No. 07 C 4705, 2009 WL 1810769, *4 (N.D. Ill. June 22, 2009)................... 11

12

13   *Gribble v. Cool Transports Inc.*,
   No. 06-cv-04863, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008)................................................................................................ 9

14

15   *Hanlon v. Chrysler Corp*.,

16      150 F.3d 1011, 1020 (9th Cir. 1998) ............................................... 14

17   *Harris v. Vector Mktg. Corp.*,

18      No. 08-CV-5198, 2011 WL 1627973, at *7 (N.D. Cal. April 29, 2011)................................................................................................ 9

19

20   *Hazel's Cup & Saucer, LLC v. Around The Globe Travel, Inc.*,
   86 Mass. App. Ct. 164, 166 (2014). ................................................ 11

21

22   *Hewlett v. Consol. World Travel, Inc.*,

23      2016 WL 4466536, at *2 (E.D. Cal. Aug. 23, 2016) ......................... 3

24   *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802, 806-807
   (N.D. Ill. 2008) (Bucklo, J.), *appeal denied* (08-8012) (7th Cir. Jun

25      13, 2008)....................................................................................11, 14, 16

26

27   *Ira Holtzman, C.P.A. v. Turza*,
   728 F.3d 682, 683 (7th Cir. 2013). ................................................. 11

28

**TABLE OF AUTHORITIES (cont'd.)**

<u>Page</u>

*Juarez v. Citibank, N.A.*,
2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016);..........................................3

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 651 (W.D. Wash. 2007).
246 F.R.D. at 650-651 ...................................................................... 12, 16

*Local Joint Exec. Bd. v. Las Vegas Sands, Inc.*,
244 F.3d 1152, 1163 (9th Cir. 2001);...................................................15

*Mateo v. V.F. Corp.*,
2009 WL 3561539, at *4 (N.D. Cal. Oct. 27, 2009).........................................13

*Meyer v. Portfolio Recovery Assocs., LLC*,
2011 WL 11712610, at *3 (S.D. Cal. Sept. 14, 2011). ..............................12, 13

*Mussat v. Global Healthcare Res., LLC*,
2013 WL 1087551, at *7 (N.D. Ill. Mar. 13, 2013) ..................................16, 17

*Negrete v. Allianz Life Ins. Co.*,
287 F.R.D. 590, 597 (C.D. Cal. 2012) ...................................................15

*O'Donovan v. CashCall, Inc.*,
278 F.R.D. 479, 489 (N.D. Cal. 2011) ...................................................13

*Pecover v. Electric Arts Inc.*,
2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010). ............................12, 16

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*,
--- F. Supp. 3d ---, 2016 WL 5390952, at *5, n.3 (N.D. Ill.
Sept. 27, 2016);............................................................................3

*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*,
No. 12-22330-CIV. 2014 WL 7366255, at *6 (S.D. Fla. Dec. 24,
2014).......................................................................................15

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
2008 WL 4906433, at *7 (C.D. Cal. Nov. 13, 2008) ..................................14

*Rodriguez v. Hayes*,
591 F.3d 1105, 1124 (9th Cir. 2010)......................................................13

1

## TABLE OF AUTHORITIES (cont'd.)

2
**Page**

3

4
*Savanna Group v. Trynex, Inc.,*
    2013 WL 66181, at *16 (N.D. Ill. Jan. 4, 2013) ............................... 17

5

6
*G.M. Sign, Inc. v. Finish Thompson, Inc.,*
    No. C 5953, 2009 WL 2581324, *6 (N.D. Ill. Aug. 20, 2009) ....................... 11

7

8
*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................. 3, 11

9

10
*Staton v. Boeing Co.,*
    327 F.3d 938, 959 (9th Cir. 2002) ...................................... 9

11

12
*In re M.L. Stern Overtime Litigation*,
    No. 07-CV-0118, 2009 WL 995864, at *3 (S.D. Cal. April 13, 2009)............. 8

13

14
*In re Syncor ERISA Litig.,*
    516 F.3d 1095, 1101 (9th Cir. 2008). ................................... 8

15

16
*Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 473 (C.D. Cal.
    2012) ............................................................... 12, 16

17

18
*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370, 1375 (9th Cir. 1993). .................................... 9

19

20
*In re Toys R Us-Delaware, Inc. – Fair and Accurate Credit Transactions Act,*
    *295 F.R.D. 438, 470 (C.D. Cal. 2014)* ............................... 19

21
*Vandervort v. Balboa Capital Corp.,*
    287 F.R.D. 554, 561 (C.D. Cal. 2012), ........................... 12, 14, 16

22

23
*Vandervort v. Blboa Capital Corp.,*
    8 F.Supp.3d 1200, 1209 (C.D. Dist Cal. 2014) ....................... 15, 18

24

25
*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043, 1048-50 (9th Cir. 2002)............................. 18

26

27
*Von Colln v. County of Ventura,*
    189 F.R.D. 583, 591 (C.D. Cal. 1999). ............................. 13

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES (cont'd.)**

<u>Page</u>

**STATUTES**

47 C.F.R. § 64.1200(f)(1) ........................................................................ 17

47 C.F.R. § 64.1200(f)(10) ........................................................................ 1

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(1)(C)...........2, 5

**RULES**

Fed. R. Civ. P. 23(a)(4).................................................................... 14, 18

Fed. R. Civ. P. 23(e). .......................................................................... 7

Fed. R. Civ. P. 23(h). ......................................................................... 18

Rule 23 (c)(2)(B) ............................................................................. 21

Rule 23(a)(1) ................................................................................. 16

Rule 23(a)(2) ................................................................................. 16

Rule 23(b)(3)................................................................................4, 17

Rule 23(e)(1)................................................................................. 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This class action is brought by Plaintiff Eric B. Fromer Chiropractic, Inc. ("Plaintiff") against Defendants New York Life Insurance and Annuity Corporation and NYLIFE Securities LLC ("Defendants") alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(1)(C) ("TCPA").  Rather than litigate this case through class certification and trial, and face the uncertainties that invariably follow, Plaintiff and Defendants (collectively, the "Parties") engaged in arms-length settlement negotiations with the assistance of a respected and experienced mediator, the Honorable Stuart E. Palmer (Ret.).  As a result of these settlement negotiations, the Parties have resolved alleged violations of the TCPA by Defendants regarding fax advertisements sent on or about March 25, 2015 and on or about March 31, 2015, subject to the Court's approval.

Pursuant to the Settlement Agreement, Defendants have agreed to make available a total of $1,100,000.00, inclusive of valid class member claims, an incentive payment to Plaintiff and attorney's fees and reasonable litigation expenses, not limited to costs, as approved by the Court (the "Settlement").  The class shall include all persons who on or about March 25, 2015 or on or about March 31, 2015 were successfully sent telephone facsimile transmissions titled "Savings and Investing 20/20 for Medical Professionals" by or on behalf of Defendants. When weighed against the risks, costs, delay, and uncertainties of continuing the

litigation, the Settlement constitutes an excellent result that is fair, adequate, and reasonable, and comports with all of the criteria for preliminary approval. Furthermore, the notice plan contemplated by the Settlement Agreement, as more fully detailed herein, complies with the applicable law and is the best notice practicable for this case.   Accordingly, Plaintiff requests that the Court grant preliminary approval to the proposed Settlement, direct distribution of notice to the Settlement Class, and set a schedule for final approval of the Settlement.

## II.   Factual and Procedural history

On June 24, 2015, Counsel for Plaintiff filed this lawsuit (Dkt. 1; Declaration of Brian J. Wanca ("Wanca Decl."), ¶ 4).   Plaintiff's Complaint alleges that Defendants sent unsolicited faxes to Plaintiff and others in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq*. (the "TCPA"). The action seeks statutory damages and injunctive relief.

On August 20, 2015, Defendants filed a Motion to Dismiss or, in the Alternative Motion to Stay or, in the Alternative Motion to Strike Class Definition ("Motion to Dismiss"). (Dkt. 23, 24, 25; Wanca Decl. ¶ 5).  Plaintiff responded to the Motion to Dismiss on September 22, 2015.  (Dkt. 34; Wanca Decl. ¶ 6).   On October 20, 2015, the Court granted Defendants' Motion to Stay but denied without prejudice the remainder of the Motion to Dismiss. (Dkt. 43; Wanca Dec. ¶ 7). The Court stayed the case pending decisions from the Supreme Court in *Campbell-*

*Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016),[1] and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).[2]

On June 6, 2016, the Court lifted the stay and reopened the case. (Dkt. 50; Wanca Dec. ¶ 8). The Parties exchanged Rule 26 initial disclosures and engaged in pre-certification discovery. Defendants produced 92 pages of transmission logs from third party, j2 Global Canada, the fax broadcaster who sent the faxes that form the basis of this action. (Wanca Dec. ¶ 9). The transmission logs produced by Defendants confirmed that 3,055 unsolicited facsimiles were successfully sent on or about March 25, 2015 and on or about March 31, 2015 to persons and entities in and around Los Angeles, California (Wanca Dec. ¶ 10.)

On August 26, 2016, the Parties attended a mediation at JAMS with Hon. Stuart E. Palmer, Ret. (Illinois App.), at which time the Parties agreed to the terms for a class-wide settlement in this matter. (Wanca Dec. ¶ 11). The parties subsequently negotiated a formal, written settlement agreement (the "Settlement Agreement"), proposed court orders, and proposed notice to the absent class members, which have been submitted to the Court.

## III. Summary of the settlement.

If approved by the Court after notice to the Settlement Class, the Parties' Settlement Agreement would resolve this action and the controversy about

---

[1] In *Campbell-Ewald*, the Supreme Court held that an unaccepted offer of judgment or settlement offer does not "moot" a plaintiff's claim. 136 S. Ct. at 672.

[2] In *Spokeo*, the Supreme Court reaffirmed that an injury-in-fact must be both "concrete" and "particularized" and remanded to the Ninth Circuit. 136 S. Ct. at 1550.

Defendants' fax advertisements sent on or about March 25, 2015 and on or about March 31, 2015 (the "Class Period"). The Parties negotiated the Settlement after reviewing and analyzing the legal and factual issues presented by this action, the risks and expenses involved in pursuing the lawsuit to conclusion, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals. Based upon their review and analysis, the Parties agreed to and executed the Settlement Agreement.

The key terms of the Agreement are as follows:

a.    Certification of a Settlement Class. The Parties have stipulated to certification of a Rule 23(b)(3) "Settlement Class" defined as, "All persons who (1) on or about March 25, 2015 or on or about March 31, 2015 (2) were successfully sent telephone facsimile transmissions titled "Savings and Investing 20/20 for Medical Professionals." Excluded from the Settlement Class are Defendants and their present and former officers, directors, shareholders, members, managers, employees, and their successors, heirs, assigns, and legal representatives; and (b) the Court and its officers.

b.    The Class Representative and Class Counsel. The Parties have agreed that Plaintiff is the Class Representative and that Plaintiff's attorneys (Brian J. Wanca of Anderson + Wanca) is Class Counsel for the Settlement Class.

c.     <u>Monetary Relief to the Members of the Settlement Class</u>. Defendants have agreed to make available a total of $1,100,000.00 (the "Settlement Fund") inclusive of valid class member claims, an incentive payment to Plaintiff, attorney's fees and reasonable litigation expenses, not limited to costs, to Class Counsel as approved by the Court, and to pay the Lawyers Committee for Civil Rights Under the Law as a *cy pres* recipient any difference between the amount paid to the claiming class members and 15% of the amount of the Settlement Fund. If class members who submit claims do not cash their checks prior to the expiration date of the checks, the money from those checks shall be given as *cy pres* to charities selected by Class Counsel and approved by the Court. Otherwise, Defendants will retain all unclaimed and unawarded funds in the Settlement Fund.

d.     <u>Class Notice</u>. The Parties have agreed to notify the Settlement Class about the settlement by sending the notice and claim form by facsimile. The notice includes instructions about opting out, objecting, or submitting a claim form by fax or mail or through the settlement website to the Claims Administrator.

e.     <u>Claims</u>.

(i)     <u>Claim Form</u>. The class notice includes a simple, one-page claim form for submitting claims for cash payments. The claim form is the fourth page of Exhibit B to the Settlement Agreement. The claim form submitted by

each class member must be signed under oath and affirm that the fax number identified as having allegedly received a fax advertisement in the Class Period, as defined, was the class member's same fax number during the Class Period. A class member submitting a timely and valid Claim Form will receive a cash payment of the lesser of $400.00 for each fax sent to them or a *pro rata* share of the Settlement Fund after the payments required by Paragraph 6 (c) above. The claimant need not possess the junk fax at issue and need not have a copy of the junk fax at issue and need not recall that he/she received the fax at issue, the claimant must merely identify himself or herself as a member of the Settlement Class by verifying ownership of the targeted fax number(s) in March, 2015.

(ii)  <u>Claims Administrator</u>. Plaintiff shall retain a third party claims administrator who will issue the class notice, maintain the settlement website, receive the claim forms, assist class members in completing and submitting forms, and provide a list of accepted and rejected claims to counsel for the Parties. The third party claims administrator will provide copies of all valid and/or accepted claim forms to counsel for the Parties. The Parties will have the opportunity to review the claim forms and a timeframe in which objections to the claim forms can be made. The decision of the claims administrator regarding the validity of claims, following any objection, shall be final and binding. The third party claims administrator shall be paid from the Settlement

Fund.

       f.     <u>Release</u>. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought, as defined in the Settlement Agreement, in this action against Defendants and the other Released Parties (as defined in the parties' Settlement Agreement) about the faxes sent by or on behalf of Defendants sent on or about March 25, 2015 and on or about March 31, 2015.  The release dos not release Defendants from any claims for other fax advertisements sent on different dates.

       g.     <u>Attorney's Fees and Costs and Class Representative Award</u>. At the final approval hearing, after the Class is notified about the same, Class Counsel will apply to the Court and request approval of award of attorney's fees equal to 29% of the Settlement Fund ($319,000.00), plus their reasonable out-of-pocket expenses, claims notice and administration fees. Class Counsel will also ask the Court to approve an award of $15,000 to plaintiff, Eric B. Fromer Chiropractic, Inc., for serving as the class representative.

## IV.    The Court should grant preliminary approval to the Class Settlement.

### A.    Standard for Preliminary Approval

Class action settlements must be approved by the Court to be effective.  *See*, Fed. R. Civ. P. 23(e).  Court approval occurs in three steps: (1) a preliminary approval hearing, at which the Court considers whether the proposed settlement is within the

range of reasonableness meriting final approval; (2) a notice and comment stage, during which class members are informed about the proposed settlement and given an opportunity to object or exclude themselves from the settlement; and (3) a "formal fairness hearing" or final approval hearing, at which the court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class. *See*, Manual for Complex Litigation (Fourth) §§ 21.632-34 (2012). Underlying this process is a well-settled judicial policy that favors settlements, especially where complex class litigation is concerned. *Class Plaintiffs v. City of Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992); *see also, Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

During the preliminary approval stage, the court determines only whether the settlement falls "within the range of possible approval, such that there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *See*, *In re M.L. Stern Overtime Litigation*, No. 07-CV-0118, 2009 WL 995864, at *3 (S.D. Cal. April 13, 2009). In other words, the Court makes only a preliminary determination of the settlement's fairness, reasonableness, and adequacy, granting preliminary approval unless the settlement terms are so unacceptable that a formal fairness hearing would be a waste of time. *See*, Manual for Complex Litigation, § 21.632; 4 Alba Conte and Herbert Newberg, Newberg on Class Actions § 11.25 (4th ed. 2002).

In assessing preliminary approval, courts consider whether a settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within a range of possible approval. *See, Harris v. Vector Mktg. Corp.*, No. 08-CV-5198, 2011 WL 1627973, at *7 (N.D. Cal. April 29, 2011). While making this assessment, courts must balance a number of factors, including: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2002); *see also, Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993).

## B. The Proposed Settlement Meets the Standard for Preliminary Approval

At the outset, it is important to note that the Settlement was negotiated at arm's length by counsel well versed in class litigation, particularly with respect to TCPA cases. The Settlement is therefore entitled preliminarily to "a presumption of fairness." *Gribble v. Cool Transports Inc.*, No. 06-cv-04863, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). As to the factors the Court may examine, the Settlement, by any measure, is clearly fair, reasonable and adequate.

First, while Plaintiff was poised to take the case through class certification and then trial, there existed unique issues in the case regarding the facsimiles at issue which could invite protracted litigation, extensive motions, hearings and inevitable appeals.  At best, this would significantly delay the ultimate recovery for the class. This Settlement avoids these issues and enables the class to obtain immediate, certain, and substantial monetary and non-monetary benefits.

Second, the amount offered in the settlement demonstrates that this Settlement is an excellent result for both the Class and Defendants, considering their risks. The TCPA gives private citizens a right to sue to (i) enjoin future transmissions, (ii) recover the greater of actual monetary damages or $500.00 in damages for each junk fax, or (iii) obtain an injunction plus damages. If a court finds that the sender willfully or knowingly violated the TCPA, it may treble the amount of damages. Here, each class member who does not opt-out of this proposed settlement and who submits a timely and valid claim form will receive a cash payment in an amount up to $400.00.Defendants have agreed to pay the attorneys' fees and expenses of Class Counsel for conferring that benefit upon each class member.

Third, this case is at a stage that allows the Parties to value it fairly.  The Parties briefed and argued a motion to dismiss, engaged in extensive discovery and participated in a mediation.  Further, as previously alluded, the Parties' are also aware of the unique facts of the case which would most assuredly result in an appeal and all of the time and costs that would entail.

Finally, Class counsel are skilled class action lawyers with extensive TCPA experience. They have been appointed class counsel in several such cases pending in this and other federal District Courts, as well as in other types of class actions. *See, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. C 5953, 2009 WL 2581324, *6 (N.D. Ill. Aug. 20, 2009) (Kendall, J.); *Green v. Service Master On Location Services, Corp.*, No. 07 C 4705, 2009 WL 1810769, *4 (N.D. Ill. June 22, 2009) (Hibbler, J.); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.), *appeal denied* (08-8012) (7th Cir. Jun 13, 2008).

Given the favorable terms of the proposed Settlement and the rigorous manner in which the terms were negotiated, the proposed Settlement is a fair, reasonable, and adequate compromise of the issues in dispute and merits preliminary approval.

## V.   Conditional Class Certification is Appropriate for Settlement Purposes

### A.   The Court should preliminarily certify the Settlement Class.

"Class certification is normal" under the TCPA "because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013). These cases typically involve thousands of identical violations, with statutory damages too small to incentivize individual suits, and present "an archetypical example of a case in which the class action mechanism is superior to that of individual litigation of each claim." *Hazel's Cup & Saucer, LLC v. Around The Globe Travel, Inc.*, 86 Mass. App. Ct. 164, 166 (2014). There are hundreds of cases certifying TCPA fax classes. District

11

courts in the Ninth Circuit have certified TCPA fax classes in, for example, *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 561 (C.D. Cal. 2012), and *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 651 (W.D. Wash. 2007). Here, the transmission logs produced by Defendants confirmed that 3,055 allegedly unsolicited facsimiles were successfully sent on or about March 25, 2015 and on or about March 31, 2015 to persons and entities in and around Los Angeles, California (Wanca Decl. ¶ 10), and so the class is ascertainable. *Vandervort*, 287 F.R.D. at 561; *Kavu*, 246 F.R.D. at 651.

In addition, the elements of Rule 23(a) & (b)(3) are easily satisfied.

### 1.    The class is sufficiently numerous.

Rule 23(a)(1)'s numerosity requirement imposes a "low hurdle easily surmounted." *Pecover v. Electric Arts Inc*., 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010). The courts use "general knowledge and common sense" in determining whether numerosity is satisfied. *Bruno v. Quten Res. Inst., LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011). A class of at least forty members presumptively satisfies numerosity. *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 473 (C.D. Cal. 2012). Here, there are thousands of class members, and joinder of all class members would not only be "impracticable," but impossible.

### 2.    There are common questions of law or fact.

Rule 23(a)(2) requires "questions of law or fact common to the class." The showing required is "minimal." *Meyer v. Portfolio Recovery Assocs., LLC*, 2011 WL 11712610, at *3 (S.D. Cal. Sept. 14, 2011). This requirement is "construed liberally,"

and it is met when "even a single common question of law or fact" is present. *O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 489 (N.D. Cal. 2011). The presence of some factual variations among class members' experiences will not defeat commonality. *Mateo v. V.F. Corp.*, 2009 WL 3561539, at *4 (N.D. Cal. Oct. 27, 2009); *Von Colln v. County of Ventura*, 189 F.R.D. 583, 591 (C.D. Cal. 1999).

This case arises out of a common nucleus of fact because the same faxes were sent by or on behalf of Defendants to all Class Members. The common legal issues include whether the faxes are "advertisements" under 47 C.F.R. § 64.1200(f)(1), and whether Defendants are "senders" under 47 C.F.R. § 64.1200(f)(10).

Thus, commonality requirement is easily satisfied in this case.

### 3. Plaintiffs' claims are typical.

Typicality measures whether there is a sufficient nexus between the claims of unnamed representatives and those of the class at large. *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). A plaintiff need only possess the same interest and have suffered the same injury as the other class members. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). Under these "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members." *Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, at *6 (E.D. Cal. Nov. 27, 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Claims need not be identical to be typical. *Id.* Typicality can be

satisfied even if factual differences exist between the plaintiff and the other class members. *Rivera v. Bio Engineered Supplements & Nutrition, Inc*., 2008 WL 4906433, at *7 (C.D. Cal. Nov. 13, 2008) (holding, "the typicality requirement is not particularly strict").

Here, Plaintiffs and the proposed class have the same legal claims based on the same statutes and are entitled to the same damages and injunctive relief. Plaintiffs' claims are typical of the class. Courts routinely find the typicality element satisfied in mass junk-faxing cases. *See, e.g.*, *Vandervort*, 287 F.R.D. at 561; *Hinman v. M & M Rental Ctr., Inc.,* 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008).

### 4.   Plaintiff and their counsel will fairly and adequately represent the class.

Rule 23(a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis involves two inquiries: (1) whether the named plaintiff and its counsel have any conflicts of interest with other class members; and (2) whether the named plaintiff and its counsel will prosecute the action effectively on behalf of the class. *Boyd v. Bank of Am. Corp*., 2014 WL 2925098, at *6 (C.D. Cal. June 27, 2014) (citing *Hanlon*, 150 F.3d at 1020).

Plaintiff does not have any conflicts of interest with the proposed Class. Plaintiff's claims are identical to the claims of the other Class Members and arise from the same conduct of the Defendants. Plaintiff and other Class Members have suffered the same alleged injury, and Plaintiff seeks relief equally applicable and

beneficial to the Class.  Further, proposed Class counsel A+W is highly qualified. A+W consists of seven highly experienced TCPA litigators. (*See* Wanca Decl. ¶ 2 : Ex. 2, Firm Resume of Anderson + Wanca). A+W has obtained certification of litigation classes and been appointed class counsel in dozens of TCPA fax class actions. *See, e.g.*, *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV. 2014 WL 7366255, at *6 (S.D., Fla. Dec. 24, 2014) ("Anderson & Wanca is one of very few firms that specialize in TCPA class actions and so is knowledgeable of the applicable law and experienced in litigating TCPA classes."). The adequacy requirement is easily satisfied.

### B.     The proposed class may be maintained under Rule 23(b)(3).

#### 1.     Certification is appropriate under Rule 23(b)(3) because common questions predominate and a class action is the superior method of adjudication.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over questions affecting only individual members of the class." It is not necessary that *all* questions be common, only that some questions are common and they predominate over the individual questions. *See Local Joint Exec. Bd. v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001); *Negrete v. Allianz Life Ins. Co.*, 287 F.R.D. 590, 597 (C.D. Cal. 2012) ("If common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, then adjudication on a representative basis is appropriate.").

Common questions predominate in this case. The four main questions are (1) whether the faxes are advertisements, (2) whether Defendants are "senders" as

defined by FCC regulation, (3) whether the faxes contain compliant opt-out notice, and (4) what statutory damages and injunctive relief are appropriate. The answers to these questions will not vary from class member to class member. There are *no* individualized issues.

Regarding superiority, a class action is routinely recognized to be a superior method of adjudicating mass TCPA violations. *Vandervort*, 287 F.R.D. at 561; *Kavu*, 246 F.R.D. at 650-51; *Hinman*, 545 F. Supp. 2d at 807 ("[R]esolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources."); *Critchfield Physical Therapy v. Taranto Grp., Inc.*, 263 P.3d 767, 778 (Kan. 2011) ("While the defendant in such [a small claims] action might benefit if only a small number of plaintiffs found it worth their while to bring suit or were aware of their rights under the TCPA, this small turnout would serve only to frustrate the intent of the TCPA and to protect junk fax advertisers from liability.").

Class enforcement is the only practical means to hold Defendants accountable. Only by aggregating their claims can consumers and businesses impacted by Defendants' junk faxes effectively challenge Defendants' alleged defiance of federal law. *See Chapman v. Wagener Equities, Inc.*, 2014 WL 540250 *16 (N.D. Ill. Feb. 11, 2014) (holding $500 statutory recovery gives individual plaintiffs "a low incentive to bring a lawsuit on their own behalf"); *Mussat v. Global Healthcare Res.,*

*LLC*, 2013 WL 1087551, at *7 (N.D. Ill. Mar. 13, 2013) (holding TCPA fax class superior given "fairly small potential for individual recovery"); *Savanna Group v. Trynex, Inc.*, 2013 WL 66181, at *16 (N.D. Ill. Jan. 4, 2013) ("small potential recovery in individual actions" under the TCPA "weighs in favor of class-wide resolution").

## VI.   The Proposed Notice Plan Meets the Requirements of Rule 23

Rule 23 (c)(2)(B) requires that, upon certifying a Rule 23(b)(3) class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.,* 361 F.3d at 575 (internal citations omitted).

Here, the Parties have agreed to a reasonable manner of notice by sending it to the fax numbers at issue in the case.  This is, after all, a case based on the receipt of faxes, and Class members are best identifiable and reachable by their fax numbers. The simple, one-page claim form will be delivered with the notice, so that member of the Settlement Class can complete a claim form and return it immediately by fax or mail or via the website, as they choose.

## VII.   Attorneys' Fees and Costs and an Award to Plaintiff

At final approval, Class Counsel will request that the Court approve the Parties' agreement to pay Class Counsel attorneys' fees equal to 29% of the Settlement Fund.  Rule 23 permits a court to award "reasonable attorney's fees … that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h); *see, Vandervort v. Blboa Capital Corp.*, 8 F.Supp.3d 1200, 1209 (C.D. Dist. Cal. 2014). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th cir. 2011).

The benchmark for a fee award in a common fund case is 25% of the recovery obtained.  *Vandervort*, 8 F.Supp at 1209.  In "megafund" cases, fees will commonly be under the benchmark, while smaller cases – particularly where the common fund is under $10 million – awards more frequently exceed the benchmark. *Id*.  The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable and whether a departure from the benchmark is warranted, including: (1) the result achieved; (2) the risk of litigation; (3) the skill required and the quality of work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Here, Class Counsel pushed forward with its TCPA case, survived novel Article III challenges to its Complaint, and negotiated a reasonable settlement to the

MEMORANDUM OF POINTS AND AUTHORITIES

benefit of the Class.  Class Counsel resolved this case through unique capabilities from their years of experience in these type of cases.  In addition, Class Counsel took this case on a contingent basis, assuming a significant risk of nonpayment, not only for their time but also for their out-of-pocket costs.  Under similar circumstances, California Courts have been willing to exceed the 25% benchmark.  *See, Vandervort*, 8 F.Supp at 1209 (Court granted a 33% award of fees and costs in a TCPA class action settlement).

Finally, Class Counsel will also request that the Court approve payment to Plaintiff in the amount of $15,000.00 from the Settlement Fund for serving as the class representative.  It is well-established that the Court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for time spent in litigation, including depositions.  *In re Toys R Us-Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 470 (C.D. Cal. 2014).

Here, Plaintiff was a catalyst for the Settlement Class's recovery.  Plaintiff filed and pursued the action.  Plaintiff responded to discovery and stayed involved and informed.  Plaintiff's efforts greatly benefited the Settlement Class and, as a result, entitled it to an incentive award.

**VIII.  The Court should schedule a final fairness hearing.**

Plaintiff requests that the Court schedule a hearing to determine whether the settlement should be finally approved. A proposed Final Approval of Agreement and

1   Judgment is attached as Exhibit 3 to the Agreement.

2   **IX.     Conclusion.**

3           WHEREFORE, Plaintiff respectfully requests that the Court enter a

4
5   Preliminary Approval Order in the form attached as Exhibit 1 to the Agreement,

6   granting preliminary approval of the proposed settlement, directing that the members

7
8   of the Settlement Class be notified about the proposed settlement in the form and

9   manner agreed by the parties (Exhibit 2 to the Agreement), and setting dates for opt-

10  outs, objections, and a final approval hearing. The final approval hearing should be

11
12  on a date no sooner than 90 days after the government officials receive the notice

13  required by CAFA.

14

15

16  November 11, 2016                    Respectfully submitted,

17

18                                       ANDERSON + WANCA

19                                       s/ Brian J. Wanca
                                         Brian J. Wanca
20                                       One of the Attorneys for Plaintiff, Eric B.
21                                       Fromer Chiropractic, Inc., individually and
                                         the representative of a class of similarly
22                                       situated persons

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES