1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 625-1600
GERAGOS@GERAGOS.COM

MARK J. GERAGOS SBN 108325
(mark@geragos.com)
BEN J. MEISELAS SBN 277412
(meiselas@geragos.com)

Local Counsel for Plaintiff and the Proposed Class

Brian J. Wanca (*pro hac vice*)
(bwanca@,andersonwanca.com)
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368- 1500
Fax: 847-368-1501

Counsel for Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ERIC B. FROMER CHIROPRACTIC,
INC., a California corporation,
individually and as the representative
of a class of similarly-situated persons,

                    Plaintiff,

        v.

NEW YORK LIFE INSURANCE
AND ANNUITY CORPORATION,
NYLIFE SECURITIES LLC, and
JOHN DOES 1-10,

                    Defendants.

**Case No.: 2:15-cv-04767 AB**

**Hon**. **Andre Birotte Jr.**

**CLASS ACTION**

**MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

Date:  July 10, 2017

Time:  10:00 a.m.

Courtroom:  7B

**TO THE COURT AND ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on July 10, 2017 at 10:00 a.m. or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Andre Birotte, Jr., United States District Court, Central District of California, Plaintiff, Eric B. Fromer Chiropractic. Inc., will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for the entry of an Order granting final approval of the parties' class action settlement.

This motion is made on the grounds that the proposed settlement is fair, adequate, and reasonable; that the Notice Plan complied with applicable legal standards; and that the Settlement Class satisfies the requirements for class certification.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Brian J. Wanca, the Declaration of Rita Hernandez, the Declaration of Dorothy Sue Merryman, the Declaration of Lewis S. Wiener, the pleadings and papers on file in this action, and any oral and documentary evidence that may be presented at the hearing on this motion.

JUNE 12, 2017                          Respectfully submitted,

                                       ANDERSON + WANCA
                                       s/ Brian J. Wanca
                                       Brian J. Wanca
                                       One of the Attorneys for Plaintiff, Eric B.
                                       Fromer Chiropractic, Inc., individually and
                                       the representative of a class of similarly
                                       situated persons.

i

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES .........................................................................................iii

I.   INTRODUCTION ...................................................................................................1

II.  Factual and Procedural history ..............................................................................2

III. Summary of the settlement. ...................................................................................4

    a.   Certification of a Settlement Class .................................................................5

    b.   The Class Representative and Class Counsel..................................................5

    c.   Monetary Relief to the Members of the Settlement Class .............................5

    d.   Class Notice ....................................................................................................6

    e.   Claims .............................................................................................................7

        (i)   Claim Form.............................................................................................7

        (ii)  Claims Administrator .............................................................................7

    f.   Release ............................................................................................................8

    g.   Attorney's Fees and Costs and Class Representative Award ........................8

IV. The Court should grant final approval to the Class Settlement ............................9

    A.   Standard for Final Approval ..........................................................................9

    B.   CAFA Compliance ......................................................................................10

**TABLE OF CONTENTS (cont'd.)**

<u>Page</u>

C.   The Class Notice Comports with Due Process and Rule 23. ................ 11

D.   The Settlement is Fair, Adequate, and Reasonable and
Warrants Final Approval ........................................................ 12

1.   Strength of Plaintiffs' case and risk, expense, complexity
and likely duration of further litigation ........................................... 12

2.   The risk of maintaining class action status .................................... 14

3.   The Amount Offered in Settlement .................................................. 15

4.   The extent of discovery completed and stage of litigation ............ 15

5.   The experience and views of class counsel ................................... 16

6.   The presence of a governmental participant .................................. 17

7.   Reaction of Class Members to the Settlement ................................ 18

8.   The absence of collusion precludes additional scrutiny
and favors final approval ............................................................ 18

V.   Conclusion ....................................................................................... 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Bluetooth Headset Prods. Liab. Litig.,*
  654 F.3d 935, 941 (9th cir. 2011)....................................................................... 19

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610 (N.D. Cal. 1979) .................................................................. 16

*Campbell-Ewald Co. v. Gomez,*
  136 S. Ct. 663 (2016) ..................................................................................2–3

*Churchill Vill., L.L.C. v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004) ......................................................................10-11

*Class Plaintiffs v. City of Seatle,*
  995 F.2d 1268 (9th Cir. 1992)........................................................................ 10

*Garner v. State Farm Mut. Auto. Ins. Co,*
  No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9
  (N.D. Cal. Apr. 22, 2010)......................................................................... 13, 18

*Green v. Service Master On Location Services, Corp.*,
  No. 07 C 4705, 2009 WL 1810769, *4 (N.D. Ill. June 22, 2009)................... 17

*Gribble v. Cool Transports Inc.,*
  No. 06-cv-04863, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008). ................. 12

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998)................................................................... 10, 18

*Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802, 806-807
  (N.D. Ill. 2008) (Bucklo, J.), *appeal denied* (08-8012)
  (7th Cir. Jun 13, 2008)...................................................................................... 17

*In re Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) ................................................................... 12, 18

*In re Omnivision Techs., Inc.,*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008).................................................... 12–13

iii

**TABLE OF AUTHORITIES (cont'd.)**

<u>Page</u>

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ..................................................................... 16–17

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008). ......................................................................... 10

*Martin v. Ameripride Services, Inc.*,
   2011 WL 2313604, at *5 (S.D. Cal. June 9, 2011) ..................................... 18–19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 13, 16

*Officers for Civil Justice v. Civil Serv. Comm'n of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ......................................................................... 9–10

*Protective Comm. for Indep. Stockholders v. Anderson*,
   390 U.S. 414 (1968) ........................................................................................ 13

*Rodriguez v. West Puhl'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................... 13, 16

*Shames v. Hertz Corp.*,
   No. 07-CV-2174-MMA (WMC), 2012 WL 5392159
   S.D. Cal. Nov. 5, 2012) .................................................................................. 12

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
   No. C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ............................. 11

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) .......................................................................... 11

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................................. 3, 11

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2002) ............................................................................ 9

*Wannemacher v. Carrington Mortgage Services, LLC*,
   SA CV 12-2016 FMO (ANx), 2014 WL 12586117
   (C.D. Cal. Dec. 22, 2014) ............................................................................ 9, 15

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Eric B. Fromer Chiropractic, Inc. ("Plaintiff"), individually and on behalf of the settlement class, submits this memorandum in support of its Motion for Final Approval of Class Action Settlement.  Defendants New York Life Insurance and Annuity Corporation and NYLIFE Securities LLC ("Defendants") do not oppose this Motion.

This Settlement is an excellent result for class members allegedly harmed by Defendants' alleged violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(1)(C) ("TCPA") and merits final approval by the Court.  Pursuant to the Settlement Agreement, Defendants have agreed to make available a total of $1,100,000.00, inclusive of valid class member claims, an incentive payment to Plaintiff, and attorney's fees and reasonable litigation expenses, not limited to costs, as approved by the Court (the "Settlement").  The class shall include all persons who, on or about March 25, 2015 or on or about March 31, 2015, were successfully sent telephone facsimile transmissions titled "Savings and Investing 20/20 for Medical Professionals" by or on behalf of Defendants.  Each claiming class member may receive up to $400.00 for each fax sent to them, which is within $100 of the maximum amount provided under the TCPA.  47 U.S.C. § 227(b)(3).  No Class Members opted out of the Settlement.

Rather than litigate this case through class certification and trial, and face the

uncertainties that invariably follow, Plaintiff and Defendants (collectively, the "Parties") engaged in arms-length settlement negotiations with the assistance of a respected and experienced mediator, the Honorable Stuart E. Palmer (Ret.). When weighed against the risks, costs, delay, and uncertainties of continuing the litigation, the Settlement constitutes an excellent result that is fair, adequate, and reasonable. Accordingly, Plaintiff requests that the Court grant final approval to the proposed Settlement.

## II.   Factual and Procedural history

On June 24, 2015, Counsel for Plaintiff filed this lawsuit (Dkt. 1; Declaration of Brian J. Wanca ("Wanca Decl."), ¶ 4). Plaintiff's Complaint alleges that Defendants sent unsolicited faxes to Plaintiff and others in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq*. (the "TCPA"). The action seeks statutory damages and injunctive relief.

On August 20, 2015, Defendants filed a Motion to Dismiss or, in the Alternative Motion to Stay or, in the Alternative Motion to Strike Class Definition ("Motion to Dismiss"). (Dkt. 23, 24, 25; Wanca Decl. ¶ 5). Plaintiff responded to the Motion to Dismiss on September 22, 2015. (Dkt. 34; Wanca Decl. ¶ 6). On October 20, 2015, the Court granted Defendants' Motion to Stay but denied without prejudice the remainder of the Motion to Dismiss. (Dkt. 43; Wanca Decl. ¶ 7). The Court stayed the case pending decisions from the Supreme Court in *Campbell-Ewald Co. v.*

*Gomez*, 136 S. Ct. 663 (2016),[1] and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).[2]

On June 6, 2016, the Court lifted the stay and reopened the case.  (Dkt. 50; Wanca Decl. ¶ 8).  The Parties exchanged Rule 26 initial disclosures and engaged in pre-certification discovery.  Defendants produced 92 pages of transmission logs from third party, j2 Global Canada, the fax broadcaster who sent the faxes that form the basis of this action. (Wanca Decl. ¶ 9).   The transmission logs produced by Defendants confirmed that 3,055 unsolicited facsimiles were successfully sent on or about March 25, 2015 and on or about March 31, 2015 to persons and entities in and around Los Angeles, California (Wanca Decl. ¶ 9.)

On August 26, 2016, the Parties attended a day long mediation at JAMS with Hon. Stuart E. Palmer, Ret. (Illinois App.), at which time the Parties agreed to the terms for a class-wide settlement in this matter. (Wanca Decl. ¶ 10).   The parties subsequently negotiated a formal, written settlement agreement (the "Settlement Agreement"), proposed court orders, and proposed notice to the absent class members, which were submitted to the Court. (Wanca Decl. ¶ 15).

On November 11, 2016, Plaintiff filed its Motion for Preliminary Approval of Class Action Settlement.  (Dkt. 63; Wanca. ¶ 16).  On February 22, 2017, the Court granted Plaintiff's Preliminary Approval Motion, certified the Settlement Class, appointed Plaintiff as the "Class Representative" and Brian J. Wanca of Anderson +

---

[1] In *Campbell-Ewald*, the Supreme Court held that an unaccepted offer of judgment or settlement offer does not "moot" a plaintiff's claim. 136 S. Ct. at 672.

[2] In *Spokeo*, the Supreme Court reaffirmed that an injury-in-fact must be both "concrete" and "particularized" and remanded to the Ninth Circuit. 136 S. Ct. at 1550.

MEMORANDUM OF POINTS AND AUTHORITIES

Wanca as "Class Counsel," approved and appointed Class-Settlement.com as the Settlement Administrator, approved the proposed class notice, and set a final approval hearing date for July 10, 2017.   (Dkt. 72; Wanca Decl. ¶ 17).

Pursuant to the Court's February 22, 2017 order, Dorothy Sue Merryman ("Merryman"), Project Manager for Class-Settlement.com, sent notice to the class by facsimile and, for the fax numbers no longer in service, by U.S. mail.  (Declaration of Dorothy Sue Merryman ("Merryman Decl.")), (Wanca Decl. ¶ 18).  No Class member has objected or opted out of the Settlement.  (Declaration of Rita Hernandez ("Hernandez Decl.") (Wanca Decl. ¶ 18).  As of June 12, 2017, 119 claims were submitted.   (Merryman Decl., Wanca Decl. ¶ 20).   The total cost for Class-Settlement.com in administrating this Settlement is $6,450.00.  (Merryman Decl., Wanca Decl. ¶ 21).

In addition, and pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"), Defendants, on March 31, 2017, sent notice of the Settlement to the Attorney General for the United States and also the attorneys general of California and every other state and territory of the United States.  (Declaration of Lewis S. Wiener ("Wiener Decl.") (Wanca Decl. ¶ 19).  No attorney general has objected or voiced concerns to this Settlement. (*Id.*).

## III.   Summary of the settlement.

If approved by the Court after notice to the Settlement Class, the Parties' Settlement Agreement would resolve this action and the controversy about

Defendants' fax advertisements sent on or about March 25, 2015 and on or about March 31, 2015 (the "Class Period"). The Parties negotiated the Settlement after reviewing and analyzing the legal and factual issues presented by this action, the risks and expenses involved in pursuing the lawsuit to conclusion, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals. Based upon their review and analysis, the Parties agreed to and executed the Settlement Agreement.

The key terms of the Agreement are as follows:

a.      Certification of a Settlement Class. The Parties have stipulated to certification of a Rule 23(b)(3) "Settlement Class" defined as, "All persons who (1) on or about March 25, 2015 or on or about March 31, 2015 (2) were successfully sent telephone facsimile transmissions titled "Savings and Investing 20/20 for Medical Professionals." Excluded from the Settlement Class are Defendants and their present and former officers, directors, shareholders, members, managers, employees, and their successors, heirs, assigns, and legal representatives; and (b) the Court and its officers.

b.      The Class Representative and Class Counsel. The Parties have agreed that Plaintiff is the Class Representative and that Plaintiff's attorneys (Brian J. Wanca of Anderson + Wanca) is Class Counsel for the Settlement Class.

c.      Monetary Relief to the Members of the Settlement Class.

MEMORANDUM OF POINTS AND AUTHORITIES

Defendants have agreed to make available a total of $1,100,000.00 (the "Settlement Fund") inclusive of valid class member claims, an incentive payment to Plaintiff, attorney's fees and reasonable litigation expenses, not limited to costs, and to Class Counsel as approved by the Court. As of June 8, 2017 (claims submission deadline), estimated payments to Claimants total less than 15% of the Settlement Fund ($165,000.00).  The difference between the total payments to claimants (estimated to be $47,600.00) and 15% of the Settlement Fund ($165,000.00) shall be paid as a *cy pres* award ($117,400.00). If any settlement check is not cashed, the Parties agree that unclaimed funds from checks issued to Claimants shall also be paid as a *cy pres* award.  The parties may recommend to the Court possible recipients of any *cy pres* award but the Court will make the determination of *cy pres* in its sole discretion. Otherwise, Defendants will retain all unclaimed and unawarded funds in the Settlement Fund.[3]

   d. <u>Class Notice</u>. The Parties have agreed to notify the Settlement Class about the settlement by sending the notice and claim form by facsimile. The notice includes instructions about opting out, objecting, or submitting a claim form by fax or mail or through the settlement website to the Claims Administrator.

---

[3] Based on data available as of the filing of this motion, that amount totals $603,229.68 calculated as follows: $1,100,000.00 less $47,600.00 (claims payment), $117,400.00 (*cy pres*), costs of $12,770.32 (firm & administration) and $319,000.00 (attorneys' fees) (total $496,770.32).

MEMORANDUM OF POINTS AND AUTHORITIES

e.      Claims.

(i)     Claim Form. The class notice includes a simple, one-page claim form for submitting claims for cash payments. The claim form is the fourth page of Exhibit B to the Settlement Agreement. The claim form submitted by each class member must be signed under oath and affirm that the fax number identified as having allegedly received a fax advertisement in the Class Period, as defined, was the class member's same fax number during the Class Period. A class member submitting a timely and valid Claim Form will receive a cash payment of the lesser of $400.00 for each fax sent to them or a *pro rata* share of the Settlement Fund after the payments required by Paragraph 6 (c) above. The claimant need not possess the junk fax at issue and need not have a copy of the junk fax at issue and need not recall that he/she received the fax at issue; the claimant must merely identify himself or herself as a member of the Settlement Class by verifying ownership of the targeted fax number(s) in March 2015.

(ii)    Claims Administrator. Plaintiff retained Class-Settlement.com as claims administrator.  Class-Settlement.com issued the class notice, has maintained a settlement website, is receiving the claim forms, is assisting class members in completing and submitting forms, and has provided a list of accepted and rejected claims to counsel for the Parties. Class-Settlement.com has provided copies of all valid and/or accepted claim forms to counsel for the

7

Parties. The Parties will have the opportunity to review the claim forms and a timeframe in which objections to the claim forms can be made. The decision of Class-Settlement.com regarding the validity of claims, following any objection, shall be final and binding. Class-Settlement.com shall be paid from the Settlement Fund.

   f. <u>Release</u>. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought, as defined in the Settlement Agreement, in this action against Defendants and the other Released Parties (as defined in the parties' Settlement Agreement) about the faxes sent by or on behalf of Defendants sent on or about March 25, 2015 and on or about March 31, 2015.  The release dos not release Defendants from any claims for other fax advertisements sent on different dates.

   g. <u>Attorney's Fees and Costs and Class Representative Award</u>. At the final approval hearing, after the Class is notified about the same, Class Counsel will apply to the Court and request approval of award of attorney's fees equal to 29% of the Settlement Fund ($319,000.00), plus their reasonable out-of-pocket expenses, claims notice and administration fees. Class Counsel will also ask the Court to approve an award of $15,000.00 to plaintiff, Eric B. Fromer Chiropractic, Inc., for serving as the class representative.

1

**IV.    The Court should grant final approval to the Class Settlement.**

2

**A.    Standard for Final Approval**

3

4

5

6

Rule 23(e) of the Federal Rules of Civil Procedure provides that "claims, issues, or defenses of a certified class may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e).  In order to approve a settlement agreement in a

7

8

9

class action, the Court must conduct a three-step inquiry.    *Wannemacher v. Carrington Mortgage Services, LLC*, SA CV 12-2016 FMO (ANx), 2014 WL

10

12586117, at *4 (C.D. Cal. Dec. 22, 2014).  First, the Court must assess whether the

11

12

defendants have met the notice requirements under CAFA, 28 U.S.C. § 1715(d).  *Id.*

13

Second, the Court must determine whether Rule 23(c)(2)(B) notice requirements

14

have been met.  *Id.*  Third, the Court must conduct a hearing to determine whether

15

16

the settlement agreement is fair, reasonable, and adequate. *Id.*; Fed. R. Civ. P.

17

23(e)(2); *see, Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

18

19

20

In determining whether a settlement is fair, reasonable, and adequate, the district court must "balance a number of factors: the strength of the plaintiff's case;

21

the risk, expense, complexity, and likely duration of further litigation; the risk of

22

maintaining class action status throughout the trial; the amount offered in settlement;

23

24

the extent of discovery completed and the stage of the proceedings; the experience

25

and views of counsel; the presence of a governmental participant; and the reaction of

26

the Class Members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d

27

28

1011, 1026 (9th Cir. 1998); *see also Staton*, 327 F.3d at 959; *Officers for Civil Justice*

*v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list of relevant considerations"). Furthermore, for settlement agreements reached prior to class certification, a higher standard of fairness is required. *Hanlon*, 150 f.3d at 1026. Underlying this analysis is a well-settled judicial policy that favors settlements, especially where complex class litigation is concerned. *Class Plaintiffs v. City of Seatle*, 995 F.2d 1268, 1276 (9th Cir. 1992); *see also, Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

### B.    CAFA Compliance

The CAFA requires that "each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement ..." 28 U.S.C. § 1715(b). This notice must contain notice of any scheduled judicial hearing, the proposed or final notification to class members, the proposed settlement, and, if feasible, the names of the class members residing in each state or a reasonable estimate of the number of class members in each state. *Id.*

Here, Defendants provided the required CAFA notice to the Attorney General of the United States, the Attorneys General of all 50 states and the District of Columbia, and the Attorneys General for the U.S. Territories in American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, the Virgin Islands, Micronesia, Palau, and the Marshall Islands. (Wiener Decl., Wanca Decl. ¶ 5). A copy of the

Notice sent is attached to the Wiener Decl. as Exhibit A.  The Notice contained all of the information referenced in CAFA and advised the recipients to contact them if they had any questions.  (*Id*.).  No responses, questions, or concerns were received. (*Id.*).  In short, CAFA's notice requirements have been satisfied.

### C.    The Class Notice Comports with Due Process and Rule 23

Before final approval of a class action can issue, notice of the settlement must be provided to the class.  Fed. R. Civ. P. 23(e)(1).  Rule 23 requires that the class receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Actual notice, however, is not required.  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.*, 361 F.3d at 575 (internal citations omitted).

In the Preliminary Approval Order, the Court previously approved the notice plan specified in the Settlement Agreement and found that it "constitutes valid, due, and sufficient notice as to the Class Members pursuant to Federal Rule of Civil Procedure 23(e)(1), California Civil Code section 1781(d), the United States Constitution, and any other applicable law."  (Dkt. 72, ¶ 6).  The Parties and Settlement Administrator, Class-Settlement.com, fully implemented the directives of the Preliminary Approval Order, thereby complying with the notice plan.  As a result

of this implementation, of the 1,047 Class Members, 840 received notice of the Settlement by facsimile and an additional 179 by U.S. Mail. (Decl. Merryman). The notice sent informed each Class member of the terms of the Settlement, the description of the litigation, a proof of claim form, time and place for final fairness hearing, contact information for questions and concerns, and information regarding how to submit a claim and opt out of or object to the Settlement. (Decl. Merryman, Ex. 1). In short, the notice to the Class satisfies Rule 23, Due Process and the standard of the "best notice practicable under the circumstances."

### D. The Settlement is Fair, Adequate, and Reasonable and Warrants Final Approval

At the outset, it is important to note that the Settlement was negotiated at arm's length by counsel well versed in class litigation, particularly with respect to TCPA cases. The Settlement is therefore entitled preliminarily to "a presumption of fairness." *Gribble v. Cool Transports Inc.*, No. 06-cv-04863, 2008 WL 5281665, at *9 (C.D. Cal. Decl. 15, 2008). As to the factors the Court may examine, the Settlement, by any measure, is clearly fair, reasonable and adequate.

#### 1. Strength of Plaintiff's case and risk, expense, complexity, and likely duration of further litigation

The first step in assessing the fairness of a class action settlement is to examine the strength of the plaintiff's case and the range of possible recovery in light of the risks of continued litigation. *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA (WMC), 2012 WL 5392159, at *5 (S.D. Cal. Nov. 5, 2012); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *In re Mego Fin.*

12
MEMORANDUM OF POINTS AND AUTHORITIES

*Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). This calls for balancing "the vagaries of litigation and [] the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); *see also Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414, 424-25 (1968) ("Basic to [analyzing a proposed settlement] in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.").

This balancing, however, is not subject to a rigid formula, and courts need not reach an ultimate conclusion on the merits. *Garner v. State Farm Mut. Auto. Ins. Co*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Puhl'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). Rather, courts analyze the probability of success through "an amalgam of delicate balancing, gross approximations and rough justice.'" *Garner*, 2010 WL 1687832, at *9 (citing *Officers for Justice*, 688 F.2d at 625) (internal quotations omitted). In the end, "the Court may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner*, 2010 WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965).

In order to obtain a successful recovery on its Complaint, Plaintiff would have needed to obtain certification of a litigation class pursuant to Rule 23(b)(3) and then

prove at trial that Defendants sent unauthorized fax advertisements without prior express permission or under an existing business relationship and that the faxes lacked a proper opt out notice. *See* 47 U.S.C. 227 (b). While Plaintiff was poised to take the case through class certification and then trial, there existed unique issues in the case regarding the facsimiles at issue which could invite protracted litigation, extensive motions, hearings, and inevitable appeals. Defendants raised a *Spokeo* challenge, alleged that the fax was not an advertisement of its products, goods, or services, and argued that the fax was sent without its approval. At best, addressing each of these issues would significantly delay the ultimate recovery for the class. Since the Settlement provides for recovery near the full statutory amount (discussed more fully below), it would be ill-advised for the Class to assume the risks and delays from further litigation. Accordingly, these factors weigh heavily in favor of approving the Settlement.

### 2.    The risk of maintaining class action status

The Court certified, for settlement purposes only, a nationwide Settlement Class in the Preliminary Approval Order. (Dkt. No. 72, ¶¶ 2,3). However, if the Court fails to grant final approval of the Settlement Agreement for any reason, the certification of the class will automatically become void. (*Id*.). Although Plaintiff and Class Counsel believe they would be successful in obtaining certification of an adversarial class absent the Settlement, Defendants would undoubtedly vigorously oppose adversarial certification. Further, even if Plaintiff was successful in a motion

MEMORANDUM OF POINTS AND AUTHORITIES

for class certification absent the Settlement, Defendants could move for decertification of the class before or during trial and likely would challenge certification on appeal. Fed. R. Civ. P.23(c)(1)(C). Accordingly, this factor weighs in favor of approving the Settlement Agreement because if at any point the Class failed to become certified or if class certification was reversed, the Class would get nothing. *See Wannemacher*, 2014 WL 12586117, at *6 (Court held that since a motion for class certification has yet to be filed, this factor weighs in favor of approving the settlement).

### 3.     The Amount Offered in Settlement

The amount offered in the Settlement strongly supports approval.  The TCPA gives private citizens a right to sue to (i) enjoin future transmissions, (ii) recover the greater of actual monetary damages or $500.00 in damages for each junk fax, or (iii) obtain an injunction plus damages.  47 U.S.C. 227 (b)(3). If a court finds that the sender willfully or knowingly violated the TCPA, it may treble the amount of damages.  *Id*. Here, each class member who does not opt-out of this proposed settlement and who submits a timely and valid claim form will receive a cash payment in an amount up to $400.00, which is 80% of the statutory amount. Defendants have agreed to pay the attorneys' fees and expenses of Class Counsel for conferring that benefit upon each class member.

### 4.     The extent of discovery completed and stage of litigation

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id*. at 527 (internal quotation marks and citation omitted).

Here, the case is at a stage that allows the Parties to value it fairly. The Parties briefed and argued a motion to dismiss, engaged in extensive discovery and participated in a day long mediation. Further, as previously discussed, the Parties' are also aware of the unique facts of the case which would most assuredly result in an appeal and all of the time and costs that would entail. This factor also favors approval of the Settlement.

### 5.    The experience and views of class counsel

"The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). In fact, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms*, 221 F.R.D. at 528. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quoting *In re Pacific Enters. Sec. Litig.*, 47

F.3d 373, 378 (9th Cir. 1995).

Here, Class Counsel are skilled class action lawyers with extensive TCPA experience.  They have been appointed class counsel in several such cases pending in this and other federal District Courts, as well as in other types of class actions. *See, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. C 5953, 2009 WL 2581324, *6 (N.D. Ill. Aug. 20, 2009) (Kendall, J.); *Green v. Service Master On Location Services, Corp.*, No. 07 C 4705, 2009 WL 1810769, *4 (N.D. Ill. June 22, 2009) (Hibbler, J.); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.), *appeal denied* (08-8012) (7th Cir. Jun 13, 2008).   Through their investigation, review of discovery materials, litigation, mediation sessions, and the settlement process, Class Counsel have gained an intimate understanding of the law and facts at issue and have previously stated under oath their belief that the settlement is "fair, adequate, and reasonable."  (Wanca Decl., ¶ 25).  Accordingly, this factor too favors approval of the Settlement.

### 6.     The presence of a governmental participant

Although there was no governmental participation in this case, Defendants were still obligated to notify the United States Attorney General and all other state attorneys general as a condition of obtaining Court approval of the Settlement.  28 U.S.C. § 1715.  "Although CAFA does not create an affirmative duty for either the state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any

concerns that they may have during the normal course of the class action settlement procedures." *Garner*, 2010 WL 1687832, at \*14. No state or federal official has raised any objection to the Settlement after receiving the CAFA notice, which favors approval.

### 7. Reaction of Class Members to the Settlement

There have been zero objections or requests to opt out of the Settlement. (Hernandez Decl., Wanca Decl., ¶ 4). Such a favorable reception is important in evaluating the fairness, reasonableness, and adequacy of the Settlement and supports approval. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 2113 F.3d 454, 459 (9th Cir. 2000).

### 8. The absence of collusion precludes additional scrutiny and favors final approval.

In addition to the factors described above, courts often require a higher standard of fairness when parties reach a settlement prior to certifying the class. *See Martin v. Ameripride Services, Inc.*, 2011 WL 2313604, at \*5 (S.D. Cal. June 9, 2011). They do so "to ensure class counsel and defendant have not colluded in settling the case." *Id.* (citing *Hanlon*, 150 F.3d at 1026). The factors most indicative of collusion between the parties are "(1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a clear sailing arrangement providing for the payment of attorneys' fees separate and apart from class funds;... and (3) when the parties arrange for fees not awarded to revert to

defendants rather than be added to the class fund." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal citations and quotations omitted). Not one of these "warning signs" is present in this case.

First, Class Counsel seeks a percentage of the Settlement Fund that falls within the Ninth Circuit's typical fee range for cases where the total recovery is relatively small ($10 million or less, as compared to settlement funds in the hundreds of millions). *See Martin*, 2011 WL 2313604, at *8. Further, the proposed Fee Award was negotiated only after Class Counsel obtained full relief for the Class. (Wanca Decl. ¶ 15) Second, there is no "clear sailing" fee provision in the Agreement. Rather, Plaintiff's attorneys' fees and costs are based upon the value of and come from the Settlement Fund.  Finally, no terms in the Settlement provide that any attorneys' fees not awarded revert to back to Defendants.

In the end, there was no collusion present in this case. To reach this determination, the Court can look to the assurances of counsel and the presence of a neutral mediator, both of which "weigh[] in favor of a finding of non-collusiveness." *In re Bluetooth*, 654 F.3d at 948. And, as explained above, despite continued effort to reach a resolution in this matter, the instant Settlement was reached only after nearly two years of litigation and formal and informal discovery. (Wanca Decl. ¶ 15). Further, the resolution could not have been reached without the assistance of a private mediator. (Id.)   Given the circumstances, coupled with the substantive terms of the Settlement and exceptional relief obtained for the Settlement Class, there should be

no question that collusion is not a concern.

Accordingly, the final factor also supports a finding that the Settlement is fair and reasonable, and the Court can properly enter an Order granting final approval of the settlement.

## V.    Conclusion.

Given the favorable terms of the proposed Settlement and the rigorous manner in which the terms were negotiated, the proposed Settlement is a fair, reasonable, and adequate compromise of the issues in dispute and merits final approval. WHEREFORE, Plaintiff respectfully requests that the Court give final approval to the Parties Settlement.

June 12, 2017                              Respectfully submitted,

                                          ANDERSON + WANCA

                                          s/ Brian J. Wanca
                                          Brian J. Wanca
                                          One of the Attorneys for Plaintiff, Eric B.
                                          Fromer Chiropractic, Inc., individually and
                                          the representative of a class of similarly
                                          situated persons

# TABLE OF AUTHORITIES (cont'd.)

<u>Page</u>

## STATUTES

28 U.S.C. § 1715(b) ...................................................................................... 4, 10

28 U.S.C. § 1715(d) ......................................................................................... 9

47 U.S.C. § 227(b) ........................................................................................... 1

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(1)(C) .............. 1

47 U.S.C. § 227(b)(3) ...................................................................................... 1

## RULES

Fed. R. Civ. P.23(b)(3) ............................................................................... 5, 13

Fed. R. Civ. P.23(c)(1)(C) ............................................................................. 15

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................... 9, 11

Fed. R. Civ. P. 23(e)(1) ................................................................................ 11

Fed. R. Civ. P. 23(e)(2) .................................................................................. 9