1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# GERAGOS & GERAGOS
A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 625-1600
GERAGOS@GERAGOS.COM

MARK J. GERAGOS SBN 108325
(mark@geragos.com)
BEN J. MEISELAS SBN 277412
(meiselas@geragos.com)

Local Counsel for Plaintiff and the Proposed Class

Brian J. Wanca (*pro hac vice*)
(bwanca@,andersonwanca.com)
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368- 1500
Fax: 847-368-1501

Counsel for Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC B. FROMER CHIROPRACTIC, INC., a California corporation, individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION, NYLIFE SECURITIES LLC, and JOHN DOES 1-10,<br><br>Defendants. | **Case No.: 2:15-cv-04767 AB**<br><br>**Hon. Andre Birotte Jr.**<br><br><u>**CLASS ACTION**</u><br><br>**MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES and INCENTIVE AWARD**<br><br>Date: July 10, 2017<br><br>Time: 10:00 a.m.<br><br>Courtroom: 7B |

**TO THE COURT AND ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on July 10, 2017 at 10:00 a.m. or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Andre Birotte, Jr., United States District Court, Central District of California, Plaintiff Eric B. Fromer Chiropractic. Inc., will move the Court, pursuant to Federal Rule of Civil Procedure 23(h), for the entry of an Order granting Plaintiff's Motion for Award of Attorneys' Fees, Expenses, and Incentive Award.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Brian J. Wanca, the Declaration of Rita Hernandez, the Declaration of Dorothy Sue Merryman, the Declaration of Lewis S. Wiener, the pleadings and papers on file in this action, and any oral and documentary evidence that may be presented at the hearing on this motion.

JUNE 12, 2016　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　ANDERSON + WANCA
　　　　　　　　　　　　　　　　　s/ Brian J. Wanca
　　　　　　　　　　　　　　　　　Brian J. Wanca
　　　　　　　　　　　　　　　　　One of the Attorneys for Plaintiff, Eric B.
　　　　　　　　　　　　　　　　　Fromer Chiropractic, Inc., individually and
　　　　　　　　　　　　　　　　　the representative of a class of similarly
　　　　　　　　　　　　　　　　　situated persons.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I. INTRODUCTION ............................................................................................... 1

II. Factual and Procedural history ........................................................................... 2

III. Requested Attorneys' Fees, Costs and Incentive Award are Fair Reasonable and Justified ............................................................................................................ 5

    A. Standard for an award for attorneys' fees ................................................. 5

    B. Class Counsel achieved an exceptional result for the Class ..................... 7

    C. There were significant risks involved in the litigation .............................. 8

    D. Class Counsel skillfully prosecuted this action ........................................ 9

    E. The contingent nature of the fee supports approval ................................ 10

    F. The fee request is also justified by reference to the Lodestar ................ 11

    G. Class Plaintiff's incentive award is reasonable ...................................... 13

IV. Conclusion ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Blum v. Stenson*,
 465 U.S. 886 (1984) .................................................................................... 6, 12

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980) ............................................................................................ 5

*Buccellato v. AT&T Operations, Inc.*,
 No. 10 CV 00463, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ................... 13

*Campbell-Ewald Co. v. Gomez*,
 136 S. Ct. 663 (2016) .......................................................................................... 3

*Chem. Bank v City of Seattle*,
 19 F.3d 1291 (9th Cir. 1994) .............................................................................. 6

*Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476
 (N.D. Cal. Jan. 26, 2007) .................................................................................. 11

*Hensley v. Eckerhart*,
 461 U.S. 424, 435 (1983) .................................................................................... 8

*In re Activision Sec. Litig.*,
 723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................... 6

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) ................................................................. 6, 11, 12

*In re Mercury Interactive Corp.*,
 618 F.3d 988 (9th Cir. 2010) .............................................................................. 6

*In re Omnivision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ 6, 8, 9, 11

*In re Toys R Us-Delaware, Inc. – Fair and Accurate Credit
 Transactions Act (FACTA) Litigation*, 295 F.R.D. 438
 (C.D. Cal. 2014) ............................................................................................... 14

# TABLE OF AUTHORITIES (cont'd.)

**Page**

**Cases**

*In re Washington Pub. Power Supply System Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .................................................................. 5, 10

*Kearney v. Hyundai Motor America*, No. SACV 09-1298-JST (MLGx),
   2013 WL 3287996 (C.D. Cal. June 28, 2013) ................................................ 13

*Parkinson v. Hyundai Motor America*,
   796 F. Supp. 2d 1160 (C.D. Cal. 2010) .................................................. 12, 13

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ..................................................................... 7

*People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*,
   90 F.3d 1307 (7th Cir. 1996) .................................................................... 12

*Pierce v. County of Orange*,
   905 F. Supp. 2d 1017 (C.D. Cal. 2012) ...................................................... 13

*Simon v. Healthways, Inc.*, 2015 WL 10015953
   (C.D. Cal. Dec. 17, 2015) ......................................................................... 10

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) .................................................................... 7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................... 3

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................. 5, 6

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990) .................................................................... 12

*Vandervort v. Balboa Capital Corp.*,
   8 F. Supp. 3d 1200 (C.D. Dist. Cal. 2014) ................................................ 7, 9

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................ 7, 8, 10, 11, 13

*Williams v. MGM-Pathe Commc'n Co.*,
   129 F.3d 1026 (9th Cir. 1997) .................................................................... 7

# TABLE OF AUTHORITIES (cont'd.)

**<u>Page</u>**

## STATUTES

28 U.S.C. § 1715(b) ................................................................................................ 4

Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(1)(C) ............... 1

47 U.S.C. § 227(b)(3) ......................................................................................... 2, 8

## RULES

Fed. R. Civ. P. 23(h). ..................................................................................... 1, 5, 8

## TREATISES

Federal Judicial Center, Manual for Complex Litigation,
 § 27.71, p. 336 (4th Ed. 2004) ............................................................................ 8

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Eric B. Fromer Chiropractic, Inc. ("Plaintiff"), submits this Motion and Memorandum in Support of Award of Attorneys' Fees, Expenses, and Incentive Award pursuant to Federal Rule of Civil Procedure 23(h) and this Court's February 22, 2017 Order granting Preliminary Approval of the Class Action Settlement, which required the filing of this Motion and Memorandum by June 12, 2017. (Dkt # 72). Defendants New York Life Insurance and Annuity Corporation and NYLIFE Securities LLC ("Defendants") do not oppose this Motion.

Plaintiff initiated this Class Action on June 24, 2015 against Defendants alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227(b)(1)(C) ("TCPA"). After briefing and arguing motions to dismiss and stay and initiating discovery, Plaintiff and Defendants (collectively, the "Parties") engaged in arms-length settlement negotiations with the assistance of a respected and experienced mediator, the Honorable Stuart E. Palmer (Ret.). As a result of the mediation, the Parties reached a settlement. Pursuant to the Settlement Agreement, Defendants have agreed to make available a total of $1,100,000.00, inclusive of valid class member claims, an incentive payment to Plaintiff, and attorneys' fees and reasonable litigation expenses, not limited to costs, as approved by the Court (the "Settlement"). The class shall include all persons who, on or about March 25, 2015 or on or about March 31, 2015, were successfully sent telephone facsimile

transmissions titled "Savings and Investing 20/20 for Medical Professionals" by or on behalf of Defendants. Each claiming class member may receive up to $400.00 for each fax sent to them, which is within $100 of the maximum amount of statutory damages provided under the TCPA. 47 U.S.C. § 227(b)(3). Additionally, the Settlement provides for an award of attorneys' fees and costs to Plaintiff from the Settlement fund and an incentive award to Plaintiff as class representative. The fees amount to $319,000.00 (twenty-nine percent (29%) of the Settlement fund) plus reasonable out-of-pocket expenses. The incentive award is $15,000.00. No Class Members opted out of or objected to the Settlement.

Because the Settlement constitutes an excellent result that is fair, adequate, and reasonable, Plaintiff requests that the Court grant this Motion and approve the fees and award it seeks.

## II.   Factual and Procedural history

Plaintiff has already provided the Court with a detailed overview of the proceedings and litigation history of this matter in its Motion for Preliminary Approval of Class Action Settlement (Dkt. 63) and in its Motion for Final Approval, which is filed contemporaneously with this Motion. To summarize, Plaintiff's Complaint alleges that Defendants sent unsolicited faxes to Plaintiff and others in violation of the TCPA. (Dkt. 1). The action seeks statutory damages and injunctive relief. (*Id.*).

On August 20, 2015, Defendants filed a Motion to Dismiss or, in the

Alternative Motion to Stay or, in the Alternative Motion to Strike Class Definition ("Motion to Dismiss"). (Dkt. 23, 24, 25; (Declaration of Brian J. Wanca ("Wanca Decl.") ¶ 5)). Plaintiff responded to the Motion to Dismiss on September 22, 2015. (Dkt. 34; Wanca Decl. ¶ 6). On October 20, 2015, the Court granted Defendants' Motion to Stay but denied without prejudice the remainder of the Motion to Dismiss. (Dkt. 43; Wanca Decl. ¶ 7). The Court stayed the case pending decisions from the Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016),[1] and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).[2]

On June 6, 2016, the Court lifted the stay and reopened the case. (Dkt. 50; Wanca Decl. ¶ 8). The Parties exchanged Rule 26 initial disclosures and engaged in pre-certification discovery. Defendants produced 92 pages of transmission logs from third party, j2 Global Canada, the fax broadcaster who sent the faxes that form the basis of this action. (Wanca Decl. ¶ 8). The transmission logs produced by Defendants confirmed that 3,055 unsolicited facsimiles were successfully sent on or about March 25, 2015 and on or about March 31, 2015 to persons and entities in and around Los Angeles, California (Wanca Decl. ¶ 9)

On August 26, 2016, the Parties attended a mediation at JAMS with Hon. Stuart E. Palmer, Ret. (Illinois App.), at which time the Parties agreed to the terms for a class-wide Settlement in this matter. (Wanca Decl. ¶ 10). The parties

---

[1] In *Campbell-Ewald*, the Supreme Court held that an unaccepted offer of judgment or settlement offer does not "moot" a plaintiff's claim. 136 S. Ct. at 672.

[2] In *Spokeo*, the Supreme Court reaffirmed that an injury-in-fact must be both "concrete" and "particularized" and remanded to the Ninth Circuit. 136 S. Ct. at 1550.

subsequently negotiated a formal, written settlement agreement (the "Settlement Agreement"), proposed court orders, and proposed notice to the absent class members, which were submitted to the Court.

On November 11, 2016, Plaintiff filed its Motion for Preliminary Approval of Class Action Settlement. (Dkt. 63, Wanca Decl. ¶ 16). On February 22, 2017, the Court granted Plaintiff's Preliminary Approval Motion, certified the Settlement Class, appointed Plaintiff as the "Class Representative" and Brian J. Wanca of Anderson + Wanca as "Class Counsel," approved and appointed Class-Settlement.com as the Settlement Administrator, approved the proposed class notice, and set a final approval hearing date for July 10, 2017. (Dkt. 72, Wanca Decl. ¶ 17).

Pursuant to the Court's February 22, 2017 order, Class Members received notice from the Settlement Administrator. (Declaration of Dorothy Sue Merryman ("Merryman Decl."), Wanca Decl. ¶ 18). Defendants also sent the Attorney General of the United States and the attorneys general of California and every other state and territory of the United States notice of the Settlement as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"). (Declaration of Lewis S. Wiener ("Wiener Decl."), Wanca Decl. ¶ 21). No Class member has objected or opted out of the Settlement. (Declaration of Rita Hernandez ("Hernandez Decl."), Wanca Decl. ¶ 18). In addition, no objection or concern has been raised by any attorney general in receipt of the Settlement. (Wiener Decl., Wanca Decl. ¶ 21).

**III.   Requested Attorneys' Fees, Costs, and Incentive Award are Fair, Reasonable and Justified.**

Plaintiff respectfully asserts that the requested award for attorneys' fees of $319,000.00 (which equals 29% of the Settlement fund), costs, and an incentive award of $15,000.00 for the class representative are fair, reasonable, and justified.

**A.   Standard for an award for attorneys' fees.**

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  As explained by the Ninth Circuit, "[a]ttorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

The "common fund" doctrine applies where, as here, an action results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. *Staton*, 327 F.3d at 967. The Ninth Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel has an equitable right to be compensated from that fund for the effort expended in creating the fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund...is entitled to a reasonable attorney's fee from the fund as a whole"); *Staton*, 327 F.3d at 967 (quoting *Boeing*); *In re Washington Pub. Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300

(9th Cir. 1994) ("those who benefit in the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it").

In common fund cases, Courts within the Ninth Circuit have discretion to use one of two methods to determine whether the fee request is reasonable: (1) percentage-of-the-fund; or, (2) lodestar plus a risk multiplier. *Staton*, 327 F.3d at 967-68; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). The current, prevailing view of federal courts across the country, including the Ninth Circuit, is that the percentage-of-recovery method should be used when a common fund is created for the benefit of a class. *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Chem. Bank v City of Seattle*, 19 F.3d 1291, 1296 (9th Cir. 1994)); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375-78 (N.D. Cal. 1989) (collecting authorities). The Supreme Court has approved of the use of the "percentage-of-fund" approach when a common fund is created for the benefit of the class (as opposed to fees awarded pursuant to a fee-shifting statute, where attorney time is used to calculate fees). *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The rationale underlying use of the percentage-of-fund method is it eliminates any incentive to unnecessarily "run-up" billable hours, encourages early settlement of disputes, and preserves judicial resources otherwise used monitoring attorneys' billable hours. *In re Activision*, 723 F. Supp. at 1376.

The Ninth Circuit has established a "benchmark" fee of 25% in common fund cases, *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th

Cir. 2011) (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), which should be adjusted upward or downward only in "unusual circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The Ninth Circuit has also held that the percentage benchmark should be measured against the full fund established by the settlement and not the amount claimed by class members. *Williams v. MGM-Pathe Commc'n Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding that it is an abuse of discretion to calculate attorneys' fees using the percentage of fund method against the claimed amount of the fund, rather than the total fund itself) (citing *Van Gemert*, 444 U.S. at 480-81).

In "megafund" cases, fees will commonly be under the benchmark, while smaller cases – particularly where the common fund is under $10 million – awards more frequently exceed the benchmark. *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1209 (C.D. Dist. Cal. 2014). The Ninth Circuit has identified factors the Court may consider in assessing whether an award is reasonable and whether a departure from the benchmark is warranted, including: (1) the result achieved; (2) the risk of litigation; (3) the skill required and the quality of work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

**B.     Class Counsel achieved an exceptional result for the Class.**

The results obtained for the class are generally considered to be the most important factor in determining the appropriate fee award in a common fund case.

*See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d at 1046; see also Federal Judicial Center, Manual for Complex Litigation, § 27.71, p. 336 (4th Ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing Fed. R. Civ. P. 23(h) committee note). Standing alone, this factor supports Class Counsel's fee request.

The TCPA gives private citizens a right to sue to (i) enjoin future transmissions, (ii) recover the greater of actual monetary damages or $500.00 in damages for each junk fax, or (iii) obtain an injunction plus damages. 47 U.S.C. 227(b)(3). If a court finds that the sender willfully or knowingly violated the TCPA, it may treble the amount of damages. *Id*. Here, each class member who does not opt-out of this proposed settlement and who submits a timely and valid claim form will receive a cash payment in an amount up to $400.00, which is 80% of the statutory amount. Without having to make any expenditures or investment in the litigation, 80% of full restitution is an outstanding result.

### C. There were significant risks involved in the litigation.

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee). This is particularly true where, like here, the case involves complicated legal and factual issues. For instance, Class Counsel had to brief and

argue novel Article III challenges to its Complaint. Defendants alleged that the fax was not an advertisement of its products, goods, or services and argued that the fax was sent without their approval. Class Counsel faced the task of certifying a TCPA class and maintaining that class throughout the litigation. Finally, Class Counsel faced the possibility that all of these issues would be challenged on appeal. This substantial risk-taking further supports an upward adjustment of a common fund attorneys' fee award. *See e.g. Vandervort,* 8 F. Supp. 3d at 1210 (Court affirmed enhanced award of 33% of common fund in TCPA class action case).

### D. Class Counsel skillfully prosecuted this action.

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047. Class Counsel are experienced class action litigators who have been appointed as "class counsel" in numerous TCPA class actions and have secured noteworthy recoveries for those classes. (Wanca Decl. ¶ 23). Class Counsel's proven track record demonstrates not only the quality of work performed, but also the skill required to successfully prosecute large complex class actions.

In the present case, Class Counsel performed significant factual investigation prior to bringing the action, conducted extensive motion work in defeating an Article III motion to dismiss and a challenge to the class definition, pursued discovery, and participated in a mediation that resulted in a million-dollar settlement for the class. In short, Class Counsels' skill and expertise supports the requested fee.

**E.     The contingent nature of the fee supports approval.**

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino,* 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

Class Counsel prosecuted this matter on a purely contingent basis while agreeing to advance all necessary expenses knowing that Class Counsel would only receive a fee if there was a recovery. (Wanca Decl. ¶ 4). In pursuit of this litigation, Class Counsel have invested considerable outlays of time and money by, among other things, (1) investigating the actions; (2) engaging in detailed motion practice; (3) pursuing discovery; and (4) participating in a mediation.   Class Counsel expended these resources despite the risk that Class Counsel may never be compensated, especially in light of the fluctuating interpretations of the TCPA and the difficulty in securing class certification. *See Simon v. Healthways, Inc.*, 2015 WL 10015953 (C.D. Cal. Dec. 17, 2015). Class Counsel here incurred over $12,779.32 in costs and

invested over 319 hours litigating this action. (Wanca Decl., ¶ 26). As such, Class Counsels' "substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees" in this matter. *Omnivision*, 559 F. Supp. 2d at 1047.

### F. The fee request is also justified by reference to the Lodestar.

A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050. However, a cross-check is optional. *See Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26, 2007) (finding that "where the early settlement resulted in a significant benefit to the class," there is no need "to conduct a lodestar cross-check"). If the Court chooses to perform such a cross-check in this matter, it will confirm that a 29% fee award of $319,000.00 is reasonable.

The lodestar method requires "multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth, supra*, 654 F.3d at 941 (citations omitted). As with the percentage-of-the-fund method, after calculating this initial lodestar figure, "the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment,' . . . . Foremost among these considerations, however, is

11
MEMORANDUM OF POINTS AND AUTHORITIES

the benefit obtained for the class." *In re Bluetooth, supra*, 654 F.3d at 941-42 (citations omitted).

Here, through June 6, 2017, Class Counsel have spent 319.25 hours working on this matter. (Wanca Decl., ¶ 26). Class Counsel anticipates an additional 20 hours to bring this matter to a close, for a total of 339.25 hours. Considering the amount of investigation and motion work put forward in this case along with the amount of time to complete settlement negotiations, the time spent is reasonable, especially for the result.

Under the lodestar analysis, reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). In that regard, "[c]ourts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (attorneys' declarations regarding prevailing fees in community and rate determinations in other cases "are satisfactory evidence of the prevailing market rate"). The Court also may consider evidence of counsel's customary hourly rate. *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) (attorney's actual billing rate is presumptively appropriate).

Reasonable hourly rates approved in this District for work similar to that

performed by Class Counsel in this case have ranged to as high as $1,000. *E.g.*, *Parkinson v. Hyundai Motor America, supra,* 796 F. Supp. 2d at 1172 (approving six attorneys' hourly rates ranging from $445 to $675); *Pierce v. County of Orange*, 905 F. Supp. 2d 1017, 1035, 1039 (C.D. Cal. 2012) (approving hourly rates between $450 and $825); *Kearney v. Hyundai Motor America*, No. SACV 09-1298-JST (MLGx), 2013 WL 3287996, *8 (C.D. Cal. June 28, 2013) (using hourly rates ranging from $150 to $800 for lodestar).

Based on these comparisons, Class Counsels' rate of $595.00 per hour is reasonable, especially since they are highly experienced TCPA lawyers with extensive knowledge in class action litigation. Multiplying Class Counsels' hours by their hourly rates yields an initial lodestar amount of $201,853.75. Since Class Counsel seek a fee award of $319,000.00, the lodestar multiplier would be 1.58. That multiplier is well within the range approved by courts in the Ninth Circuit, providing further support for the fee award Plaintiffs seek. *E.g., Vizcaino v. Microsoft, supra*, 290 F.3d at 1051 & n.6 (approving multiplier of 3.5); *Buccellato v. AT&T Operations, Inc*., No. 10 CV 00463, 2011 WL 3348055, *2 (N.D. Cal. June 30, 2011) (approving multiplier of 4.3).

**G.     Class Plaintiff's incentive award is reasonable.**

Finally, Class Counsel will also request that the Court approve payment to Plaintiff in the amount of $15,000.00 from the Settlement Fund for serving as the class representative. It is well-established that the Court may grant a modest

incentive award to class representatives, both as an inducement to participate in the suit and as compensation for time spent in litigation, including depositions. *In re Toys R Us-Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 470 (C.D. Cal. 2014).

Here, Plaintiff was a catalyst for the Settlement Class's recovery. Plaintiff filed and pursued the action. Plaintiff responded to discovery and stayed involved and informed. Plaintiff's efforts greatly benefited the Settlement Class and, as a result, entitled it to an incentive award.

**IV. Conclusion.**

WHEREFORE, Plaintiff respectfully requests that the Court grant its Motion for an award of attorneys' fees in the total amount of $319,000.00, litigation costs of $12,779.32 (plus additional costs incurred after June 8, 2017), and an incentive award in the amount of $15,000 for the named Plaintiff.

June 12, 2017                           Respectfully submitted,

                                        ANDERSON + WANCA

                                        s/ Brian J. Wanca
                                        Brian J. Wanca
                                        One of the Attorneys for Plaintiff, Eric B.
                                        Fromer Chiropractic, Inc., individually and
                                        the representative of a class of similarly
                                        situated persons